James LEE POWELL, a/k/a Mahmud
Ameen Seifullah, Plaintiff,

v.

W.J. ESTELLE, Jr., Director,
TDC, et al., Defendants.

Alvin Lee HARRISON, a/k/a Usaama S.
Abdal Matiyn, Plaintiff–Appellant,

v.

Daniel V. McKASKLE and David
Myers, Defendants–Appellees.

Howard A. MILSTEAD,
Plaintiff–Appellant,

v.

James A. LYNAUGH, Director, Texas
Department of Corrections,
Defendant–Appellee.

Keith Bernard WILEY, a/k/a Musa
Zakee Na'Eem, Plaintiff–
Appellant,

v.

R.K. PROCUNIER, et al., Defendants–
Appellees.

No. 90–4446
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

March 19, 1992.

Rehearing Denied April 27, 1992.

Alvin Lee Harrison, a/k/a Usaama S. Abdal Matiyn, pro se.

Howard A. Milstead, pro se.

Keith B. Wiley, pro se.

Robin Sanders, Asst. Atty. Gen. and Jim Mattox, Atty. Gen., Austin, Tex., for appellees.

Before POLITZ, Chief Judge, KING and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:

These consolidated appeals involve challenges to the Texas Department of Criminal Justice's (TDCJ) grooming code. Plaintiffs brought suit under 42 U.S.C. § 1983 alleging that their religion requires them to grow their hair long and forbids them from shaving their facial hair, and that TDCJ's prohibition on long hair and beards violated their first amendment right to exercise their religion freely.[1] After taking testimony from prison officials about the reasons for the code and from the plaintiffs about alternatives that might accommodate them, the district court determined that the code did not infringe on the plaintiffs' constitutional rights. Plaintiffs appeal, contending mainly that the district court erred in finding that the code was rationally related to legitimate penological objectives. We affirm.

■ Prisoners enjoy the first amendment's proscription of laws infringing on their ability freely to practice their religion, *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987), but, because of both the reality of incarceration and the inherent conflict with various legitimate penological objectives, their constitutional protections are considerably more circumscribed than those of the general public. *See Pell v. Procunier,* 417 U.S. 817, 822–23, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974). In *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), the Supreme Court set forth the standard for

---

1. The district court consolidated 24 pending cases raising free exercise challenges to the TDCJ grooming code. Only Harrison, Wiley and Milstead have appealed.

evaluating prison regulations which are challenged as violative of the Constitution: "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 89, 107 S.Ct. at 2261. The Court went on to refine the contours of this test, discussing several factors that are relevant to a finding of a regulation's reasonableness: (1) whether there is a valid, rational connection between the regulation and the legitimate, neutral governmental interest used to justify it; (2) whether there exist alternative means for prisoners to exercise the constitutional right at issue; (3) the impact of an accommodation on prison staff, inmates, and allocation of prison resources; and (4) whether any alternative exists that would fully accommodate prisoners' rights at low costs to valid penological interests. *Id.* at 89–91, 107 S.Ct. at 2261–63. Clearly, alleged infringements of prisoners' constitutional rights are reviewed under a less exacting standard than that applied to the population at large.

In *O'Lone*, the Court explicitly adopted the *Turner* standard, without any qualifications, in the context of prisoner challenges to regulations under the first amendment's Free Exercise Clause. 482 U.S. at 349–50, 107 S.Ct. at 2404–05; *see also Mumin v. Phelps*, 857 F.2d 1055, 1056 (5th Cir.1988). In order to enable it to make the findings required under *Turner* and *O'Lone*, the district court first held a hearing on October 28, 1988, in which representatives of TDCJ testified about the state's interest in the grooming code. The state's primary concern was security. There was testimony that contraband or weapons could be hidden in long hair or in beards and that such items might not be discoverable either by metal detectors or by requiring the inmates to run their hands through their hair and beards. The state testified that it would be necessary for guards to perform individual searches of prisoners, thereby creating expensive and time consuming management problems and possibly raising security problems if other inmates objected to this sort of search. The state also contended that allowing pris-

oners to grow their hair would cause a number of identification problems. Prisoners' appearances would change from the appearance on their identification card, thus making it more difficult for guards who were not familiar with all prisoners to identify them. Moreover, prisoners who grew their hair in prison would be more difficult to apprehend after escape because they could change their appearance by cutting their hair following escape. Concerns were raised about the safety of long hair in certain industrial jobs and the effect on hygiene if worn by prisoners working in food services. Finally, the state expressed a belief that long hair might be used for intraprisoner identification purposes, with the primary concern the facilitation of homosexual contacts and gang activity. The regulation, the state asserted, advances penological goals by helping to control these activities.

The district court next held a hearing on January 22, 1990, to take testimony from representatives of the plaintiffs involved in the consolidated cases about the possibility of alternatives that would engender peaceful coexistence between TDCJ's policies and the plaintiffs' religious practices. The day after this hearing, the district judge entered oral findings of fact and conclusions of law. He found that prisoners could secrete contraband and weapons in long hair and beards and that TDCJ's grooming code furthered its legitimate interest in preventing this form of security risk. He also found that the code furthered the state's interest in identifying prisoners who escape, although he expressed a belief that this alone could not support the regulation. The judge agreed that the state had an interest in ensuring the safety of prisoners in industrial jobs, and he found that long hair and beards were a safety risk to the substantial number of prisoners working around heavy industrial equipment. Finally, the judge was convinced that the state's interest in maintaining hygiene, both in food service operations and in the prison population generally, justified the regulation. The judge rejected the state's arguments that elimina-

tion of the grooming code would cost millions of dollars (for, e.g., extra camera equipment) and would be a setback to rehabilitation efforts. The court concluded that the plaintiffs did not make showings on any of the other factors enunciated in *Turner* sufficient to enable them to overcome the conclusion that the regulation was a reasonable one.

■ On appeal, the plaintiffs essentially argue that the district court's findings as to the rationality of the regulation are unsupported by the record. They first challenge the conclusion that the regulation advances security. Prison security as a general matter is certainly a valid penological objective. *See O'Lone*, 482 U.S. at 348, 107 S.Ct. at 2404. The question is whether requiring prisoners to cut their hair and beards is rationally related to the achievement of this goal. The state presented extensive testimony from various prison officials about the various methods prisoners could use to hide weapons and contraband in long hair and beards. There was testimony about experiences in other state prison systems which tended to show that it is quite easy for prisoners to secrete these items and that extensive searching is required to counteract the safety risks. Although the plaintiffs assert that there was insufficient evidence of weapons having been found in the hair and beards of prisoners at TDCJ, that may simply be evidence that the regulation works as intended. We agree with other circuits that have been presented with challenges to prison hair length regulations that requiring prisoners to maintain short hair is rationally related to the goal of preventing the concealment of weapons and contraband in hair and beards. *See Iron Eyes v. Henry*, 907 F.2d 810 (8th Cir.1990); *Fromer v. Scully*, 874 F.2d 69 (2d Cir.1989); *Pollock v. Marshall*, 845 F.2d 656, 659 (6th Cir.), *cert. denied*, 488 U.S. 987, 109 S.Ct. 239, 102 L.Ed.2d 228 (1988); *Martinelli v. Dugger*, 817 F.2d 1499, 1506 (11th Cir. 1987).

■ There also was sufficient testimony to support the district court's conclusion that the hair length regulation is rationally related to the security-related goal of identifying prisoners, both during their stay in the prison and after escape. The state indicated that prison officials might have difficulty matching prisoners whose appearances changed with their identification cards, particularly where guards and prisoners are rotated among the system's facilities. In addition, prisoners who maintained long hair while in prison could markedly change their appearance after an escape, thus making it difficult to identify them. A number of courts have found regulations on beard and hair length justified by the difficulties arising from the changing appearances of prisoners, *e.g.*, *Fromer*, 874 F.2d at 74 (beard length); *Brightly v. Wainwright*, 814 F.2d 612, 613 (11th Cir.) (per curiam), *cert. denied*, 484 U.S. 944, 108 S.Ct. 332, 98 L.Ed.2d 359 (1987) (beard length); *Iron Eyes*, 907 F.2d at 814 (hair length), and we agree with the district judge that the TDCJ regulation bears a rational relationship to this state interest.

■ We also find that there was sufficient evidence to support the district court's conclusion that long hair and beards would have an adverse impact on the safety of prisoners working around industrial equipment and the hygiene of the prison population as a whole. Although plaintiffs point to testimony that only eight to ten percent of the jobs available at TDCJ involve equipment or tasks where long hair or beards would affect safety, the state has an interest in having the flexibility to move prisoners in and out of jobs involving these hazards. Thus, safety concerns potentially affect a much larger segment of the prison population. The plaintiffs also quarrel with the state's interest in maintaining hygiene in food service preparation when only one-ninth of the prison population works in jobs related to food preparation and service. The total prison population, however, is 45,000, thus exposing a significant number of inmate food service workers to the food that the rest of the population must eat. And, once again, TDCJ has an interest in shifting prisoners in and out of food preparation and service jobs.

The analysis above relates to the first part of the *Turner* test. We cannot determine whether the district judge properly evaluated possible alternatives or their effect on the state's penological objectives in arriving at his conclusion that the regulation was reasonable, because the plaintiffs did not provide a transcript of the January 22, 1990, hearing in the record on appeal. It was the plaintiffs' responsibility to provide a transcript of the hearing if their contentions on appeal related to findings or conclusions made on the basis of that transcript. Fed.R.App.P. 10(b)(2). There is no indication in the record that the plaintiffs ever moved the district court or this court for a transcript on the grounds of inability to pay. To the extent that the plaintiffs challenge district court findings made on the basis of evidence adduced at the January 22, 1990 hearing, we will not consider the appeal. *Richardson v. Henry*, 902 F.2d 414, 416 (5th Cir.), *cert. denied*, — U.S. ——, 111 S.Ct. 260, 112 L.Ed.2d 218 (1990). Therefore, we accept the district court's conclusion that no viable alternatives were presented by the plaintiffs. The TDCJ prohibition on long hair and beards is rationally related to legitimate state objectives. The judgment of the district court is AFFIRMED.