Pickell v. Brooks 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 




NO. 3-91-276-CV




SANDRA PICKELL,



 APPELLANT


vs.





WILLIAM H. BROOKS, EXECUTIVE DIRECTOR,

TEXAS BOARD OF PARDONS AND PAROLES,

IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES,


 APPELLEE



 



FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT,



NO. 475,331, HONORABLE F. SCOTT McCOWN, JUDGE PRESIDING


 




 This appeal involves the doctrines of governmental immunity and procedural due
process in the context of an agency adjudication. At issue is whether a state agency's denial of
supervisory credit to an employee satisfies procedural due process. Sandra Pickell, appellant,
filed suit against the executive director of the Board of Pardons and Paroles, (1) William H. Brooks,
appellee, in both his official and individual capacities, for judicial review of Brooks' action and
for original claims of violation of state constitutional due-process rights and of breach of contract. The district court rendered a general summary judgment in favor of Brooks, and
Pickell raises a single point of error--the district court erred in rendering summary judgment. (2) We
will affirm.



Facts


 Pickell has been an employee of the Board since January 1983. She was first
employed as a parole caseworker in Abilene and was promoted in February 1987 to unit
supervisor. In late 1987, Pickell became interested in an ATP-I position in Austin. (3) Although
the ATP-I position carried significant administrative responsibilities, it did not have supervisory
responsibilities. Pickell was concerned about this lack of supervisory responsibilities because
supervisory experience is often a prerequisite for advancement on the Board's career ladder.

 Pickell discussed the lack of supervisory responsibilities with William Burke, who
at that time was the director of the Board's internal audit division and who would be her
supervisor if she took the position. Burke told Pickell that if she took the ATP-I position, she
would receive credit for supervisory experience. (4) Pickell moved from Abilene to Austin and
began her new job in February 1988.

 In June 1989, Pickell applied for a job as a parole supervisor. This position
required five years experience in criminal justice or a related field, including two years
supervisory experience, half of which had to be acquired as an employee of the Board. Pickell
had worked for the Board for more than five years and had one year of supervisory experience
with the Board from her job as a unit supervisor in Abilene. Pickell believed that she met the
balance of the supervisory experience requirement because of the supervisory credit she had been
accruing in her ATP-I position. The Board informed Pickell in July 1989 that she lacked the two
years supervisory experience.

 Pickell filed a grievance in July 1989, and in October 1989 Brooks determined that
she would be awarded credit for supervisory experience in her ATP-I position only through June
1, 1988. Brooks decided at that time not to grant Pickell a formal grievance hearing. Pickell filed
suit in December 1989 and sought a temporary injunction to compel Brooks to provide a grievance
hearing. Brooks testified at the hearing on the motion for a temporary injunction that it would
be futile to hold a grievance hearing as he had already decided to deny her grievance. The Board
allowed Pickell to present her grievance without a hearing, and Brooks once again denied her
grievance in February 1990.

 In December 1990, Brooks moved for summary judgment in district court on the
grounds that: (1) Pickell received adequate procedural due process; (2) governmental immunity
protected Brooks; (3) the state constitution does not independently establish a cause of action for
damages; and (4) no contract existed between Pickell and the Board. Brooks argued in part that
the May 24, 1988, memorandum approved by Glenn Heckmann terminated any contractual rights
to supervisory credit that Pickell may have had. See Memorandum of May 24, 1988, supra note
4. In January 1991, Pickell moved for partial summary judgment on the issue of whether she had
a property interest in receiving credit for supervisory experience. The district court granted
Brooks' motion for summary judgment and denied Pickell's motion for partial summary judgment
in May 1991.

 Pickell's claims can be divided into two groups: (1) her original breach-of-contract
claim against Brooks in district court; and (2) her procedural due-process claims raised both in
her suit for judicial review of Brooks' action and her original cause of action in district court for
violation of procedural due-process rights. Pickell also purports to sue Brooks in both his official
and individual capacities, but her second amended petition states her causes of action using the
words, "The Agency, by and through William Brooks," demonstrating that Brooks has only been
sued in his official capacity. Thus, despite the case style, we hold that Pickell has asserted no
claims against Brooks in his individual capacity. (5)

 As we will discuss, the doctrine of governmental immunity bars Pickell's original
claim for breach of contract against Brooks in his official capacity. Finally, Pickell's procedural
due-process suit for judicial review of Brooks' action and her original procedural due-process
claim cannot succeed because she has not demonstrated that she has suffered a deprivation which
warrants procedural due-process protection.



Governmental Immunity


 The doctrine of governmental immunity bars Pickell's original claim against Brooks
in his official capacity for breach of contract. (6) Governmental immunity consists of two basic
principles of law. First, the state as sovereign cannot be sued without its permission. E.g.,
Hosner v. De Young, 1 Tex. 764, 769 (1847); Board of Land Comm'rs v. Walling, Dallam 524,
525-26 (Tex. 1843); Dillard v. Austin Indep. Sch. Dist., 806 S.W.2d 589, 592 (Tex. App.--Austin
1991, writ denied). The doctrine bars suits against the state unless the state has expressly given
its consent to be sued. E.g., Missouri Pac. R.R. v. Brownsville Navigation Dist., 453 S.W.2d
812, 814 (Tex. 1970). Second, the state has immunity from liability even though the state has
consented to be sued. Id. at 813; State v. Isbell, 94 S.W.2d 423, 424 (Tex. 1936); Dillard, 806
S.W.2d at 592. Furthermore, a suit against a state officer in his official capacity is a suit against
the state. See, e.g., Herring v. Houston Nat'l Exch. Bank, 253 S.W. 813, 814-15 (Tex. 1923). 
Although the justifications for governmental immunity have long been criticized, the supreme
court has said that the waiver of governmental immunity is a matter properly addressed to the
legislature, not the courts. Lowe v. Texas Tech Univ., 540 S.W.2d 297, 298 (Tex. 1976).

 Pickell has neither shown that the state has consented to her suit against Brooks in
his official capacity nor shown that the Board's enabling legislation allows such suits. See Act
of May 29, 1989, 71st Leg., R.S., ch. 785, §§ 1.02, .11, .20, 1989 Tex. Gen. Laws 3471, 3471,
3473, 3475 (Tex. Rev. Civ. Stat. Ann. art. 4413(401), §§ 1.02, .11, .20, since repealed and
partially codified at Tex. Gov't Code Ann. §§ 493.001-.002 (West Supp. 1993)). (7) Pickell
correctly points out that the state waives its immunity from liability when it contracts, but the
contracting party must first obtain permission to sue. Fristoe v. Blum, 45 S.W. 998, 999 (Tex.
1898); Dillard, 806 S.W.2d at 592; Ferguson v. Johnson, 57 S.W.2d 372, 376 (Tex. Civ.
App.--Austin 1933, writ dism'd); State v. Elliott, 212 S.W. 695, 698 (Tex. Civ. App.--Galveston
1919, writ ref'd).

 Pickell directs us to a 1979 court-of-appeals case to support her argument that
governmental immunity does not preclude her original claims in the district court. Martine v.
Board of Regents, State Senior Colleges, 578 S.W.2d 465 (Tex. Civ. App.--Tyler 1979, no writ). 
Martine involved the dismissal of a tenured university professor, and the court recognized an
inherent procedural due-process right of appeal to the district court that would be limited to
questions of law, including substantial-evidence review. (8) Id. at 473.

 The governmental-immunity holding in Martine, however, did not extend to the
original claims that Martine filed in the trial court, but only dealt with his suit for judicial review. (9) 
Procedural due process, of course, allows a party to seek judicial review on the narrow issue of
whether procedural due process has been violated, but a party may not bootstrap other claims to
the due-process claim. A procedural due-process requirement of notice and hearing does not
necessarily abrogate the state's immunity from suit and immunity from liability. See Daniels v.
Williams, 474 U.S. 327, 333-35 & n.3 (1986). A plaintiff can receive adequate procedural due
process in the form of notice and a hearing that results in a dismissal on the ground of
governmental immunity.

 Concluding that Martine does not support Pickell's position, we hold that
governmental immunity bars Pickell's original breach-of-contract claim against Brooks in his
official capacity.



Procedural Due Process


 Pickell's procedural due-process claims give rise to her suit for judicial review of
Brooks' action and her original cause of action in district court for violation of procedural
due-process rights. She concedes that the legislature has not provided for judicial review of
actions of the Board, but argues that procedural due process entitles her to such review. (10) See City
of Amarillo v. Hancock, 239 S.W.2d 788, 790-91 (Tex. 1951). (11) We do not reach the issue of
whether procedural due process requires Pickell's suit for judicial review, however, because we
conclude that she has not suffered a deprivation that warrants procedural due-process protection.

 Procedural due process involves the preservation of both the appearance and reality
of fairness so that "no person will be deprived of his interests in the absence of a proceeding in
which he may present his case with assurance that the arbiter is not predisposed against him." 
Marshall v. Jerrico, Inc., 446 U.S. 238, 242 (1980). Both the right to be heard from and the
right to be told why are distinct from the right to a different outcome. Procedural due process
expresses the fundamental idea that people, as opposed to things, at least are entitled to be
consulted about what is done to them. See Laurence H. Tribe, American Constitutional Law §
10-7, at 666 (2d ed. 1988).

 Modern procedural due-process analysis begins with determining whether the
government's deprivation of a personal interest warrants procedural due-process protection. This
interest may be either a so-called "core" interest, i.e., a life, liberty, or vested property interest,
or an interest that stems from independent sources, such as state law. (12) See Board of Regents v.
Roth, 408 U.S. 564, 577 (1972); Perry v. Sindermann, 408 U.S. 593, 601 (1972). The courts
must accord full deference to the statutory law that creates property interests beyond the "core"
interests. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985). Rightly or wrongly,
current procedural due-process analysis protects only what actually belongs to the individual,
rather than recognizing that unfairness exists in the very act of disposing of an individual's
situation without allowing the individual to participate in some meaningful way. See Tribe, supra,
§ 10-12, at 713. Procedural due-process analysis next determines what process is due, with courts
looking almost exclusively to the Constitution for guidance. Loudermill, 470 U.S. 532 (1985).

 Pickell is unable to meet the first prong of procedural due-process analysis as she
has not demonstrated that she has either a "core" interest or an interest that stems from
independent sources such as state law. (13) Pickell argues that she has a vested property right in
receiving supervisory credit as long as she maintains her current job. Pickell, however, was an
at-will employee, and as such she only had vested property rights to the salary and benefits for
the time she had already worked. See, e.g., Sterner v. Marathon Oil Co., 767 S.W.2d 686, 689
(Tex. 1989); East Line & R.R. R.R. v. Scott, 10 S.W. 99, 102 (Tex. 1888); Ferris v. Texas Bd.
of Chiropractic Examiners, 808 S.W.2d 514, 518 (Tex. App.--Austin 1991, writ denied). Under
the at-will employment doctrine, the Board had the authority to modify the terms of her
employment contract as it did in the May 24, 1988, memorandum approved by Heckmann. (14) 
After May 24, 1988, Pickell had neither a "core" interest nor an interest that stems from
independent sources which is recognized in procedural due-process jurisprudence. See Bishop v.
Wood, 426 U.S. 341 (1976) (affirming termination of at-will police officer). We, therefore, do
not reach the second issue of determining the amount of procedural due process to which she is
entitled. We hold that her suit for judicial review of Brooks' action and her original cause of
action in district court for violation of procedural due-process rights are without merit.

Conclusion


 Pickell's point of error is overruled in all respects. The judgment of the district
court is affirmed.



 

 Bea Ann Smith, Justice

[Before Chief Justice Carroll, Justices Aboussie and B. A. Smith]

Affirmed

Filed: December 23, 1992

[Publish]
1. Since events at issue began, the legislature has abolished the Board of Pardons and
Paroles and reestablished it as a division of the Texas Department of Criminal Justice. Act of
May 21, 1985, 69th Leg., R.S., ch. 427, sec. 2, art. 42.18, § 3, 1985 Tex. Gen. Laws 1531,
1550 (Adult Parole and Mandatory Supervision Law, Tex. Code Crim. Proc. Ann. art. 42.18,
§ 3, since amended) (creating Board of Pardons and Paroles as statutory agency); Act of May
29, 1989, 71st Leg., R.S., ch. 785, §§ 1.02, .11, .20, 1989 Tex. Gen. Laws 3471, 3471,
3473, 3475 (Tex. Rev. Civ. Stat. Ann. art. 4413(401), §§ 1.02, .11, .20, since repealed and
partially codified at Tex. Gov't Code Ann. §§ 493.001, .002 (West Supp. 1993)) (creating
Texas Department of Criminal Justice as statutory agency, establishing pardons and paroles
division within Department, and abolishing old Board of Pardons and Paroles effective January
1, 1990).
2. See Malooly Bros., Inc. v. Napier, 461 S.W.2d 119, 121 (Tex. 1970). The standards for
reviewing a motion for summary judgment are well established: (1) The movant for summary
judgment has the burden of showing that no genuine issue of material fact exists and that it is
entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material
fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as
true; and (3) every reasonable inference must be indulged in favor of the nonmovant and any
doubts resolved in its favor. Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985).
3. The term "ATP-I" means "Administrator of Technical Programs-I." Pickell's job title
changed to "Auditor III" in September 1989 after she filed suit, but her job duties have
remained the same.
4. After Pickell filed her grievance, Burke memorialized this conversation in August 1989. 
Two other after-the-fact memoranda are relevant to the representations made to Pickell before
her move to Austin. Glenn Heckmann, the Board's then executive director, approved a May
24, 1988, memorandum, that stated, "[a]ll Parole Analyst [sic], field, institutional, Hearing,
and Hearing [sic] Officers and Community Resource Officers will be given credit for their
administrative experience in lieu of supervisory experience. This credit will be given on a one
time basis. This will be effective immediately. After this these employees will not be given
credit for this experience." In a September 11, 1989, memorandum, Heckmann stated, "[t]o
clarify the matter, it was my intent to grant all Analysts, Community Resource Officers,
Hearing Officers, and ATP-Is credit for their administrative experience in lieu of supervisory
experience. Furthermore, it was my intent that employees in the aforementioned categories
would continue to receive administrative/supervisory experience as long as they performed
their duties at that level."
5. We may look through the capacity in which Pickell has sued Brooks to ascertain the true
nature of her claims. See State v. Lain, 349 S.W.2d 579, 582 (Tex. 1961) (court should not
exalt form over substance when considering capacity in which officer is sued).
6. Brooks properly raised governmental immunity in his answer. See Davis v. City of San
Antonio, 752 S.W.2d 518, 520 (Tex. 1988).
7. Pickell has not argued, and we will not address, the issue of whether procedural due
process overrides governmental immunity on her breach-of-contract claim. See, e.g., Daniels
v. Williams, 474 U.S. 327, 333-35 & n.3 (1986); Davidson v. Cannon, 474 U.S. 344, 347-48
(1986).
8. The Martine court quoted City of Amarillo v. Hancock to support the conclusion that
Martine had an inherent procedural due-process right of appeal to the district court. Hancock,
239 S.W.2d 788, 790-91 (Tex. 1951). As we will discuss later in our opinion, Hancock is a
procedural due-process case, and Hancock's statement that a violation of a vested property
right allows judicial review (the so-called "inherent right to appeal") may be broader than
current United States Supreme Court Fourteenth Amendment procedural due-process
jurisprudence.
9. Martine's specific holding was as follows:


 [Martine] has an inherent right to appeal to the courts the adverse
effect of a decision by an administrative agency on his vested
property interest in his position as a tenured member of the
faculty of a state university, despite the lack of a statutory
provision therefor, and obviating the requirement of legislative
consent for a suit against the State through its agency . . . . Such
judicial review would be limited to a question of law, i. e.,
whether the decision of the Board to dismiss [Martine] has
support in substantial evidence as reflected in the proceedings
before said Board.


Martine, 578 S.W.2d at 473. We question the breadth of this holding as it would seem that
Martine was only entitled to a suit for judicial review to determine if the Board violated his
procedural due-process rights. See generally supra note 8 and text discussing procedural due
process.
10. Pickell's point of error alleges that her state constitutional procedural due-process rights
have been violated, but she cites only to federal cases interpreting the Due Process Clause of
the Fourteenth Amendment. See Tex. Const. art. I, § 19. Without the benefit of adequate
briefing on the state constitutional claim, we will, therefore, treat Pickell's point of error as
alleging a federal constitutional procedural due-process violation.
11. The inherent right of appeal in Hancock was again characterized as a due-process right
in Chemical Bank & Trust Co. v. Falkner, 369 S.W.2d 427, 433 (Tex. 1963).
12. The question of whether an administrative agency may adjudicate ownership of property
rights is a concern separate from the guarantees of procedural due process. Cf. Amarillo Oil
Co. v. Energy-Agri Prods., Inc., 794 S.W.2d 20, 26 (Tex. 1990) (Railroad Commission has
no statutory authority to determine title to land or property rights).
13. Pickell claimed at one point in the proceedings below that Brooks was obligated to give
her an opportunity to present her grievance under The Fire and Police Employee Relations
Act, Tex. Rev. Civ. Stat. Ann. art. 5154c-1 (West 1987). We do not see how Pickell
qualifies under the Act as either a police officer or firefighter, but Pickell has not advanced the
Act as the basis for her procedural due-process interest. Cf. City of San Antonio v. San
Antonio Park Rangers Ass'n, No. 4-91-531-CV, slip op. at 6-8 (Tex. App.--San Antonio Nov.
25, 1992, n.w.h.) (protective service employees other than firefighters and city police officers
excluded from rights enumerated in Act).
14. The May 24, 1988, memorandum states, "[a]ll Parole Analyst [sic], field, institutional,
Hearing, and Hearing [sic] Officers and Community Resource Officers will be given credit for
their administrative experience in lieu of supervisory experience. . . . After this these
employees will not be given credit for this experience." (Emphasis added). Although the
memorandum is anything but a model of clarity, Pickell neither has suggested an alternate
interpretation that the memorandum somehow extended the credit past May 24, 1988, nor has
she specifically alleged that the memorandum is ambiguous and, therefore, raises an
unresolved factual issue which precludes rendition of summary judgment.