David Gene MORRIS, Appellant,

v.

James A. COLLINS, Appellee.

No. 01–94–00950–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 17, 1995.

David Gene Morris, for appellant.

Dan Morales, Ann Kraatz, Hirge Vega, Georgia L. Meaney, Drew T. Durham, Austin, for appellee.

Before HUTSON–DUNN and O'CONNOR, JJ.

## OPINION

WILSON, Justice.

David Gene Morris, a Texas Department of Corrections inmate, filed suit pro se *in forma pauperis* against the appellee, James Collins, the executive director of the Texas Department of Criminal Justice (TDCJ). Morris challenges the constitutionality of

TDCJ's grooming standards under the equal rights amendment to the Texas Constitution, article 1, section 3a, and TEX. GOV'T CODE § 501.001.[1] The trial court, without a hearing, dismissed the case with prejudice as frivolous under TEX.CIV.PRAC. & REM.CODE § 13.001. We affirm.

In his sole point of error, Morris contends the trial court improperly dismissed his case because there is an arguable basis in law as to whether the TDCJ's haircut policy violates the equal rights amendment of the Texas Constitution and TEX.GOV'T CODE § 501.001.

■ A trial court has broad discretion to determine whether to dismiss a suit under TEX.CIV.PRAC. & REM.CODE § 13.001. *Brown v. Lynaugh,* 817 S.W.2d 813, 815 (Tex.App.— Houston [1st Dist.] 1991, no writ). A court may dismiss an action if: (1) the allegation of poverty in the affidavit is false; or (2) the action is frivolous or malicious. TEX.CIV. PRAC. & REM.CODE § 13.001(a). To determine whether an action is frivolous or malicious, the court can consider if (1) the action's realistic chance of ultimate success is slight; (2) the claim has no arguable basis in law or fact; or (3) it is clear that the party cannot prove a set of facts in support of the claim. TEX.CIV.PRAC. & REM.CODE § 13.001(b).

■ When, as in the present case, the trial court dismisses a suit without a fact hearing, the court could not have determined the suit had no arguable basis in fact. *Hector v. Thaler,* 862 S.W.2d 176, 178 (Tex.App.— Houston [1st Dist.] 1993, no writ); *Birdo v. Williams,* 859 S.W.2d 571, 572 (Tex.App.— Houston [1st Dist.] 1993, no writ). The supreme court has held that, in such a case, we must consider whether the trial court properly determined there is no arguable basis in law for the suit. *Johnson v. Lynaugh,* 796 S.W.2d 705, 706 (Tex.1990); *see also Brown,* 817 S.W.2d at 814.

### Fact Summary

Morris complains the prison's grooming policy caused him to lose his individuality and self-esteem because he is not able to grow his hair in a way that flatters him to compensate for hereditary hair loss. Morris argues that TDCJ's Inmate Orientation Handbook requires male inmates to have hair that is neatly trimmed up the back of the neck and head and cut around the ears.[2] He claims the policy also forbids any "block," "Afro," "natural," or "shag" haircuts. TDCJ's grooming policy for female inmates apparently only forbids "mohawks" and shaved or partially shaved heads.

■ The reality of incarceration is that inmates do not share the same quality of constitutional protection as the general public. *Powell v. Estelle,* 959 F.2d 22, 23 (5th Cir.1992). The various penological objectives require that courts circumscribe the constitutional protections extended inmates. *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282 (1987); *see Pell v. Procunier,* 417 U.S. 817, 822–23, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974). Thus, we review a prisoner's claim of infringements of constitutional rights under a less exacting standard than we review those of the population at large. *Powell,* 959 F.2d at 23.

■ In *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), the Supreme Court set forth the standard for evaluating prison regulations challenged as violating the federal constitution: "When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." 482 U.S. at 89, 107 S.Ct. at 2261; *Powell,* 959 F.2d at 22. The *Turner* Court discussed several factors relevant to determining a regulation's validity:

1. whether there is a valid, rational connection between the regulation and the legitimate, neutral governmental interest used to justify it;

---

1. Act of May 11, 1989, 71st Leg., R.S., ch. 212 sec. 2.01, § 500.001, 1989 Tex.Gen.Laws 918, 955, *amended by* Act of Mar. 25, 72d Leg., R.S., ch. 16, sec. 10.01, § 501.001, 1991 Tex.Gen.Laws 244, 308.

2. A copy of the handbook does not appear in the record.

2. whether there are alternative means for prisoners to exercise the constitutional right at issue;

3. the impact of an accommodation on prison staff, inmates, and allocation of prison resources; and

4. whether any alternative exists that would fully accommodate prisoners' rights at low costs to valid penological interests.

*Id.* at 89–91, 107 S.Ct. at 2261–62. The *Turner* decision did not require a court to weigh evenly, or even consider, each of these factors. *Scott v. Mississippi Dept. of Corrections,* 961 F.2d 77, 80 (5th Cir.1992).

In *Powell,* the TDJC advanced justifications for hair grooming rules which further penological interests. Security problems result because prisoners can hide weapons in long hair. More prison resources then have to be allocated for guards to perform individual searches for weapons. Long hair also makes it harder to identify prisoners and apprehend them if they escape. Other legitimate penological interests include job safety and hygiene concerns. *Id.* at 24.

 The TDJC presents similar justifications for the regulation Morris complains of in this case. We conclude the grooming regulation forbidding long hair and challenged by Morris is reasonably related to the legitimate penological interests of security, allocation of resources, and health and safety, and is therefore valid. We conclude there is no arguable basis in law for Morris's claim. Therefore, we hold the trial court's dismissal of this case as frivolous under TEX.CIV.PRAC. & REM.CODE § 13.001 was not improper. We overrule Morris's point of error.

Finding no reversible error, we affirm the judgment of the trial court.

O'CONNOR, Justice, concurring.

I agree with the disposition of this appeal, but write separately because I disagree with the reasoning of the majority opinion.

In any case in which the State, a political subdivision of the State, or a state or local official is a defendant, the threshold question must always be whether the court has subject matter jurisdiction based on governmental immunity from suit. The court must determine in each case whether the doctrine applies. Texas courts regularly dismiss otherwise meritorious actions against the State if the plaintiff cannot demonstrate a waiver of governmental immunity.

The true issue in this appeal is whether an inmate has any more right to sue the State than does an individual who is not incarcerated. The answer to that question must be no. In this appeal, the State moved to dismiss an inmate's lawsuit and relied in part on TEX. CIV.PRAC. & REM.CODE § 13.001, a statute largely designed to weed out frivolous lawsuits filed by indigent plaintiffs, and in particular, prisoners. The court decisions interpreting dismissals under section 13.001 have so far only reviewed the propriety of the dismissal under that statute and have not addressed the underlying question of whether the prisoner has the right to sue the State *at all.*

A person who is incarcerated certainly has no more right to sue the State than does the average citizen. For the reasons given below, I believe it is unnecessary to reach the merits of the trial court's dismissal under section 13.001 as the majority does. I would affirm the trial court's dismissal because the underlying suit was barred by governmental immunity, and the trial court, therefore, had no subject matter jurisdiction.

**Factual Summary**

David Gene Morris, a prison inmate, sued James Collins in his official capacity as the executive director of the Texas Department of Criminal Justice—Institutional Division (TDCJ). Morris asked for the following relief: (1) a declaratory judgment that the TDCJ's rules and policies concerning inmates' hair discriminates between inmates because of their sex in violation of TEX.GOV'T CODE § 501.001; (2) an injunction prohibiting the TDCJ from maintaining separate rules and policies regarding inmate hair for male and female inmates; (3) actual and compensatory damages in excess of $1,000; (4) a protective order to prevent harassment or retaliation against him as a result of filing this action; (5) costs of suit; (6) any and all

attorney fees; and (7) any other relief to which he may be entitled.

Collins, through the Attorney General, filed special exceptions and an answer raising a number of defenses and affirmative defenses, including governmental immunity and official immunity. In his special exceptions, Collins objected to the pleadings because, among other reasons, Morris did not plead facts sufficient to overcome governmental and official immunity.[1] After Morris replead, Collins filed a motion to dismiss premised on two grounds: (1) the suit was frivolous under TEX.CIV.PRAC. & REM.CODE § 13.001 and (2) the State was immune from suit. The trial court dismissed the case without stating a reason for the dismissal.

In his sole point of error, Morris contends the trial court improperly dismissed his case because there is an arguable basis in law whether TDCJ's haircut policy violates the equal rights amendment to the Texas Constitution and TEX.GOV'T CODE § 501.001. Morris does not attack the dismissal on the grounds of governmental immunity.

### Review of Summary Judgment and Dismissal Orders

When a summary judgment or dismissal order does not state the specific grounds on which it was granted, a party appealing from the judgment rendered pursuant to that order must show that each of the independent arguments alleged in the motion for summary judgment or motion to dismiss is insufficient to support the order. *See Gannon v. Baker,* 830 S.W.2d 706, 709 (Tex.App.— Houston [1st Dist.] 1992, writ denied). Morris has not shown that the trial court could not have dismissed based on governmental immunity. Normally we would affirm the

trial court's judgment merely because Morris did not attack each of Collins' two grounds for dismissal. We cannot do that here, however, because the ground Morris did not attack asserts a lack of subject matter jurisdiction. If at any time during a suit it becomes apparent to either the trial or appellate court that the court has no authority under the law to adjudicate the issues presented, it becomes the duty of the court to dismiss the cause. *Protestants v. American Pubs, Inc.,* 787 S.W.2d 111, 113 (Tex.App.— Houston [1st Dist.] 1990, writ denied). Accordingly, I believe we cannot consider this appeal on the merits until we determine whether the trial court had subject matter jurisdiction over Morris' claims.

### Governmental Immunity

Morris filed his suit against Collins in his official capacity as the executive director of TDCJ.[2] A suit against a state officer in his official capacity is a suit against the State. *Herring v. Houston Nat'l Exch. Bank,* 113 Tex. 264, 253 S.W. 813, 814 (1923); *Pickell v. Brooks,* 846 S.W.2d 421, 425 (Tex.App.—Austin 1992, writ denied).

The State, as sovereign, is immune from suit unless it gives its permission to be sued. *Missouri Pac. R.R. v. Brownsville Navigation Dist.,* 453 S.W.2d 812, 813 (Tex.1970); *Board of Land Comm'rs v. Walling,* Dallam 524, 525–26 (Tex.1843); *Alcorn v. Vaksman,* 877 S.W.2d 390, 403 (Tex.App.—Houston [1st Dist.] 1994, writ denied); *see also Texas Southern Univ. v. Federal Sign,* 889 S.W.2d 509, 511–12 (Tex.App.—Houston [14th Dist.] 1994, writ requested) (state university immune from suit for breach of contract); *Pickell,* 846 S.W.2d at 424–26 (Board of Pardons

---

1. The doctrine of governmental immunity encompasses both immunity from suit and immunity from liability. *Dillard v. Austin ISD,* 806 S.W.2d 589, 592 (Tex.App.—Austin 1991, writ denied). The doctrine of official immunity is an affirmative defense for state officials who are sued in their individual capacities. *See City of Lancaster v. Chambers,* 883 S.W.2d 650, 653 (Tex.1994).

2. Morris could have brought claims against Collins in his individual capacity to avoid the barrier of governmental immunity, but an examination

of the pleadings demonstrates that Morris only sued Collins in his official capacity. *See Dillard,* 806 S.W.2d at 598 (doctrine of governmental immunity requires public servants to be sued in their personal capacity unless immunity is otherwise waived). To avoid confusion, plaintiffs should ideally include the relevant capacity in the style of their suit, e.g., "David Gene Morris v. James A. Collins in His Official Capacity as Executive Director of the Texas Department of Criminal Justice—Institutional Division" or "David Gene Morris v. James A. Collins in His Individual Capacity."

and Paroles immune from suit for breach of contract); *Dillard*, 806 S.W.2d at 594–96 (school district immune from suit for promissory and equitable estoppel); *State v. Elliott*, 212 S.W. 695, 701–02 (Tex.Civ.App.—Galveston 1919, writ ref'd) (State was immune from suit unless legislature granted plaintiff permission to sue for personal injuries sustained as employee of Texas State Railroad).[3] There are exceptions to the State's immunity from suit: (1) civil rights claims under 42 U.S.C. § 1983 (1988); (2) violations of federal procedural due process, *Pickell*, 846 S.W.2d at 425; and (3) inverse condemnation, TEX. CONST. art. I, § 17; *Steele v. City of Houston*, 603 S.W.2d 786, 791 (Tex.1980). Morris did not allege any of these exceptions to the State's immunity from suit. Morris did allege a state constitutional violation, which does not abrogate the State's immunity from suit. Typically, a plaintiff who claims a violation of constitutional rights must sue the appropriate state official in the official's individual capacity and ask for injunctive relief.[4] *See Dillard*, 806 S.W.2d at 598.

Morris has not shown that the legislature consented to his suit against Collins, that TDCJ's enabling statute allows such suits, or that any other general law waives the State's immunity from suit. *See Pickell*, 846 S.W.2d at 425. Therefore, the State's immunity from suit deprived the trial court of subject matter jurisdiction over Morris' claims.

## Conclusion

If I am correct that the trial court had no subject matter jurisdiction over Morris'

claims, then this Court must affirm for that specific reason. The Court cannot affirm the trial court's dismissal based on section 13.001 because it is fundamental error to ignore a lack of jurisdiction. Even if I were incorrect and the trial court had subject matter jurisdiction over Morris' claims, then the majority still errs because it does not address the predicate jurisdictional issue.

Because Morris loses either way, some may argue that this is a "no harm, no foul" situation. I disagree, as both the judicial system and ultimately the people of Texas are harmed when our courts disregard the limits placed on their power to act.

Finally, the majority's disposition based on section 13.001 is also bad public policy. It is more efficient to dispose of prisoner suits based on governmental immunity rather that engaging in a time-consuming case-by-case analysis of whether a claim is frivolous. If law-abiding citizens are denied the right to sue the State for redress, what possible reason can there be to allow convicted criminals to bring such suits?

Accordingly, I respectfully concur in the judgment only.

---

**3.** Because Collins filed an affirmative defense on grounds of governmental immunity, we would not need to reach the issue addressed by the Austin Court of Appeals in *Southwest Airlines Co. v. Texas High–Speed Rail Authority*, 867 S.W.2d 154 (Tex.App.—Austin 1993, writ denied). There, the Austin Court discussed the Texas Supreme Court's opinion in *Davis v. City of San Antonio*, which appears to require the State to plead governmental immunity from both liability *and* suit as an affirmative defense. *Davis*, 752 S.W.2d 518, 520 (Tex.1988). The Austin Court pointed out that only governmental immunity from liability was at issue in *Davis* and suggested that *Davis* may only be dicta to the extent that it purports to require the State to preserve immunity from suit, a jurisdictional issue, by raising an affirmative defense. *Southwest Airlines*, 867 S.W.2d at 158 n. 6. Since lack of jurisdiction is fundamental error, *Davis* arguably creates an

exception, applicable only to the State, to the general rule that fundamental error cannot be waived.

**4.** There is no exception to the doctrine of governmental immunity from suit in cases involving requests for injunctive relief against the State or a state official in his or her official capacity. In 1906, the Texas Supreme Court held that a suit requesting injunctive relief against a state officer in that person's capacity as a state official is in fact an impermissible suit against the State. *Stephens v. Texas & Pac. Ry.*, 100 Tex. 177, 97 S.W. 309, 312 (1906). Of course, the legislature in some instances has waived governmental immunity from suit by specifically allowing suits for injunctive relief. *See, e.g.*, TEX.GOV'T CODE § 554.003.