Opinion issued May 29, 2008 



In The 

Court of Appeals 



For The 



First District of Texas 


NO. 01-07-00477-CV 

TEXAS DEPARTMENT OF CRIMINAL JUSTICE, Appellant 
V. 
DONALD C. JACKSON, Appellee 


On Appeal from the 412th District Court 
Brazoria County, Texas 
Trial Court Cause No. 37704 



MEMORANDUM OPINION 

This is an accelerated, interlocutory appeal by the Texas Department of Criminal Justice (TDCJ) authorized by section 51.014(8) of the Civil Practice & Remedies Code and rule 28.1 of the Rules of Appellate Procedure. See TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(8) (Vernon Supp. 2007–08); TEX. R. APP. P. 

28.1. TDCJ challenges denial of its plea to the jurisdiction, which asserted that 

sovereign immunity barred claims by appellee, Donald C. Jackson, an inmate at TDCJ’s Ramsey II unit in Rosharon, [1] who claimed that TDCJ unconstitutionally deprived him of property. [2] TDCJ’s single issue reasserts the sovereign immunity bar to Jackson’s claims. We reverse and render judgment dismissing appellant’s case against TDCJ. 

Background Facts, Allegations, and Procedural History 



A. Jackson’s Pleadings 

Jackson’s claims derive from damage to a typewriter and box fan that had been in his possession. These and other items had been inventoried and placed in a prison storage facility while Jackson was away from his unit on medical leave. Jackson’s pleadings allege that these items were damaged when they were returned to him after his medical leave, and that he requested repair or replacement of the items by pursuing a Step 1 grievance through the prison grievance system. 

Jackson claims that prison officials “conspired” at that point to deprive him of the damaged typewriter and fan “in retaliation” for (1) previously filing a lawsuit in 

[1] The unit has also been known as the Stringfellow unit. 

[2] Jackson also sued several individuals, employees of TDCJ, but the trial court’s order and this appeal concern only TDCJ. We also note that the trial court sustained TDCJ’s plea to the jurisdiction regarding other claims by Jackson than those addressed in this opinion. Jackson did not perfect his own appeal to challenge the trial court’s ruling as to those claims. 

state court relating to “confiscation of [his] radio and headphone set” and (2) 

initiating the Step 1 grievance relating to the typewriter and box fan. Shortly thereafter, the typewriter and box fan were confiscated from Jackson’s living area. The reason stated for the seizure on the prison’s form was “ownership questioned.” Jackson disputed that assertion in the Step 2 grievance he filed at that point, in which he claimed (1) “that his property was confiscated in retaliation for the exercise of his right of access to the courts and for use of the prison grievance [system],” and (2) that he was in “possession of documentation” showing his authority to possess the typewriter and fan. 

Jackson’s pleadings allege that while the Step 2 grievance was pending, prison officials conspired to delete the documents establishing his rightful possession from prison records, with the result that his grievance was resolved in a report stating that, “after further investigation[, Jackson] never owned the property . . . in question, and therefore it will be disposed of in accordance with Administrative Directive 03.72.” 

According to Jackson, Administrative Directive 03.72 requires that “confiscated property will be utilized for reissue to another inmate or donated to a charitable organization.”[3] Therefore, Jackson argues, exercise of TDCJ’s “intentional conduct and exercise of [its] lawful authority “caused an invasion and/or interference 

The record does not contain the text of Administrative Directive 03.72, except as interpreted by Jackson. 

with [Jackson’s] property,” and TDCJ’s acts constituted a taking for application to 

public use without compensation” and without due process, in violation of Article I, sections 17 and 19 of the Texas Constitution. See TEX. CONST. art. I, §§ 17, 19.[4] 



B. TDCJ’s Plea and Jackson’s Response 

TDCJ claimed in its plea to the jurisdiction that the doctrine of sovereign immunity bars all of Jackson’s claims. Jackson responded that jurisdiction was proper in the trial court because (1) Article I, section 17 of the Texas Constitution “authorizes suits and recoveries against the sovereign for the taking, damaging, or destruction of property for public use” and (2) TDCJ “intentionally and wrongfully enforced” Administrative Directive 03.72, which “resulted in a taking of [Jackson’s] fan and typewriter for public use.” Jackson relied on Steele v. City of Houston, 603 S.W.2d 786 (Tex. 1980), among other authorities. 



C. Basis of the Trial Court’s Ruling 

The trial court sustained TDCJ’s plea “on all claims except [Jackson’s] claim that . . . TDCJ took his property without due process” and specified that TDCJ “may 

Article I, section 17 states, “No person’s property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made unless by the consent of such person; and, when taken, except for the use of the State, such compensation shall be first made, or secured by a deposit of money.” TEX. CONST. art. 1, § 17. Article I, section 19 states, “No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land.” TEX. CONST. art. 1, § 19. The Fourteenth Amendment of the federal Constitution bars that conduct when performed without “due process.” U.S. CONST. amend. XIV. 

not assert sovereign immunity for the due process claim, and this shall be the only 

claim remaining against . . . TDCJ.” The order recites the trial court’s express reliance on Steele. 

The State may waive immunity from suit by statutory consent, as in the Tort Claims Act, TEX. CIV. PRAC. & REM. CODE ANN. § 101.001–.029 (Vernon 2005), or by the limited waiver established by statutes authorizing a suit for judicial review, as for example, under the Administrative Procedures Act. See Dep’t of Prot. & Regulatory Servs. v. Mega Child Care, 145 S.W.3d 170, 197–98 (Tex. 2004) (citing TEX. GOV’T CODE § 2001.174). Neither of these applies here.[5] 

Accordingly, as this Court recognized in Morris v. Collins, 916 S.W.2d 527 (Tex. App.—Houston [1st Dist.] 1995, no writ), Jackson had to rely on the three exceptions to the general rule that the State or its agencies are immune from suit, as follows: (1) civil rights claims under 42 U.S.C. § 1983 (1988); (2) violations of federal procedural due process, Pickell v. Brooks, 846 S.W.2d 421, 425 (Tex. App.—Austin 1992, writ denied); and (3) inverse condemnation, TEX. CONST. art. I, § 17; Steele, 603 S.W.2d at 791. Morris, 916 S.W.2d at 531 (listing three 

Well-settled law rejects any right of judicial review of an administrative order unless 

(1) a statute explicitly provides that right or (2) the order violates a constitutional right. Houston Mun. Employees Pension Sys. v. Ferrell, 248 S.W.3d 151, 158 (Tex. 2007) (citing Gen. Servs. Comm’n v. Little-Tex Insulation Co., 39 S.W.3d 591, 599 (Tex. 2001); Cont’l Cas. Ins. Co. v. Functional Restoration Assocs., 19 S.W.3d 393, 397 (Tex. 2000); Firemen’s & Policemen’s Civil Serv. Comm’n v. Kennedy, 514 S.W.2d 237, 239–40 (Tex. 1974); City of Amarillo v. Hancock, 514 S.W.2d 788, 790–92 (Tex. 1951)). 

exceptions). Jackson does not challenge the trial court’s dismissal of his section 1983 

claims for want of jurisdiction, but argues that the latter two claims survive TDCJ’s jurisdictional plea. 

Steele recognizes that the “taking, damaging or destruction of property for public use” constitutes a waiver of governmental liability, as contemplated by Article I, section 17 of the Texas Constitution. See Steele, 603 S.W.2d at 791. Relying on Steele, the trial court construed Jackson’s pleadings as having alleged an unconstitutional taking, for which TDCJ could not claim immunity from either suit or liability, pursuant to Article I, section 17. See id. The trial court also referred expressly to Jackson’s due process claim and thus construed Jackson’s pleadings as also alleging that TDCJ’s actions violated his rights to due process for which TDCJ had no immunity from suit or liability. Given the trial court’s express recitals, our analysis encompasses Article I, sections 17 and 19, as well as the Fourteenth Amendment of the federal Constitution, which bars deprivation of property without “due process.” U.S. CONST. amend. XIV. 



Plea to the Jurisdiction—Standard of Review 

A plea to the jurisdiction seeks dismissal because the trial court lacks subject-matter jurisdiction to consider the cause. Harris County v. Sykes, 136 S.W.3d 635, 638 (Tex. 2004). Whether a trial court has subject-matter jurisdiction is a question of law subject to de novo review. Hoff v. Nueces County, 153 S.W.3d 45, 48 (Tex. 

2004); Tex. Dep’t of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex. 2004); 

Tex. Dep’t of Family & Protective Servs. v. Atwood, 176 S.W.3d 522, 527 (Tex. App.—Houston [1st Dist.] 2004, pet. denied). As a unit of state government, TDCJ is immune from suit and liability unless there is consent. See Tex. Dep’t of Transp. 

v. Jones, 8 S.W.3d 636, 638 (Tex. 1999). 

Sovereign immunity has two component parts—immunity from suit and immunity from liability. Id.; Tex. Dep’t of Criminal Justice v. Miller, 48 S.W.3d 201, 204 (Tex. App.—Houston [1st Dist.] 1999, rev’d on other grounds, 51 S.W.3d 583 (Tex. 2001) (citing Fed. Sign v. Tex. Southern Univ., 951 S.W.2d 401, 405 (Tex. 1997)). Immunity from suit is jurisdictional. Jones, 8 S.W.3d at 638; Miller, 48 S.W.3d at 604 (citing Southwest Airlines Co. v. Tex. High-Speed Rail Auth., 867 S.W.2d 154, 158 nn.6–7 (Tex. App.—Austin 1993, writ denied)). Governmental immunity from suit defeats a trial court’s subject-matter jurisdiction and may properly be raised by a plea to the jurisdiction. Miranda, 133 S.W.3d at 225-26; see Miller, 48 S.W.3d at 204. When, as here, a plea to the jurisdiction challenges the pleadings, we construe them liberally to discern the pleader’s intent and to determine whether the facts alleged affirmatively demonstrate the court’s jurisdiction. State v. Holland, 221 S.W.3d 639, 642–43 (Tex. 2007). 

“Taking” Claim—Article I, Section 17 Sovereign immunity generally protects the State from lawsuits for the monetary 

damages that Jackson seeks here, but does not preclude an inverse condemnation 

claim brought under Article I, section 17 of the Texas Constitution, which waives immunity for the taking, damaging or destruction of property for public use and authorizes compensation for these acts by the State. See Gen. Servs. Comm’n v. Little-Tex Insulation Co., 39 S.W.3d 591, 598 (Tex. 2001); Steele, 603 S.W.2d at 791. 

Condemnation is the procedure by which the sovereign exercises its right to take property of a private owner for public use, without consent, upon the payment of just compensation. Villarreal v. Harris County, 226 S.W.3d 537, 542 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (citing City of Houston v. Boyle, 148 S.W.3d 171, 178 (Tex. App.—Houston [1st Dist.] 2004, no pet.)). “Inverse condemnation” occurs when (1) the owner of property seeks (2) compensation for (3) property taken for public use (4) “without process or a proper condemnation proceeding.” Id. (quoting Boyle, 148 S.W.3d at 178). One whose property has been “taken, damaged, destroyed for, or applied to, public use without adequate compensation” may bring an inverse condemnation claim pursuant to Article I, section 17 to recover compensation for loss of the property. Id. (quoting Boyle, 148 S.W.3d at 177); Tex. Parks & Wildlife Dep’t v. Callaway, 971 S.W.2d 145, 148 (Tex. App.—Austin 1998, no pet.). The protection applies to both real and personal property. See Retzlaff v. Tex. Dep’t of Criminal Justice, 135 S.W.3d 731 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (addressing application of protection to claim of theft of inmate’s money). 

To establish that an inverse condemnation has occurred, as contemplated by the constitution—and, therefore, that a waiver of sovereign immunity has occurred—the owner of the property must show that (1) the State intentionally performed certain acts in the exercise of its lawful authority (2) that resulted in a taking of property (3) for public use. See Steele, 603 S.W.2d at 791–92; Villarreal, 226 S.W.3d at 542. Taking encompasses any direct invasion of a property right. See Steele, 603 S.W.2d at 790; Woodson Lumber Co. v. City of College Station, 752 S.W.2d 744, 746 (Tex. App.—Houston [1st Dist.] 1988, no writ). Whether a taking occurred is a question of law. See Tex. Dep’t of Transp. v. City of Sunset Valley, 146 S.W.3d 637, 644 (Tex. 2004); Retzlaff, 135 S.W.3d at 744. Relying on Steele, Jackson contends that his pleadings meet these standards and state an inverse condemnation claim for the damage or destruction of the typewriter and fan. 

In Steele, three individuals sought damages under the waiver of immunity established by Article I, section 17 when a house and belongings in it were destroyed by fire. Steele, 603 S.W.2d at 788. [6] The fires had been set by police officers to force escaped prisoners who had taken refuge in the house to leave and be captured. Id. The supreme court rejected the lower courts’ summary judgment rulings that exercise 

Steele owned the house and had rented it to a husband and wife, whose belongings were destroyed. Steele v. City of Houston, 603 S.W.2d 786, 789 (Tex. 1980). 

of the City’s police power excused compensation and held that Steele and his tenants 

had alleged a compensable damage within the meaning of Article I, section 17’s waiver of immunity because a taking had occurred that was intentional, neither negligent nor grounded in nuisance, and for a public use. See id. 

The Steele court also found the taking constituted a public use. The public use in Steele encompassed the “real or supposed” emergency—to the general public—“to apprehend armed and dangerous” escaped prisoners. Id. at 792. The public use “singled out” Steele and his tenants to bear the cost of that emergency, see Woodson Lumber, 752 S.W.2d at 746-47, and the use benefitted the entire community and thus the public at large. See Retzlaff, 135 S.W.3d at 744; Leathers v. Craig, 228 S.W. 995, 998 (Tex. Civ. App.—Galveston 1921, no writ). 



“Disposition” is Not a “Taking” 

Jackson argues that his pleadings allege a taking for public use within the meaning of Article I, section 17 because prison officials stated that the confiscated typewriter and fan would be “disposed of in accordance with Administrative Directive 03.72.” According to Jackson, Administrative Directive 03.72 provides that “confiscated property will be utilized for reissue to another inmate or donated to a charitable organization.” 

Jackson’s pleadings cannot be construed as having alleged an unconstitutional taking. His contentions ignore the reason for TDCJ’s confiscation demonstrated by 

the record on appeal. That confiscated property is disposed of by donating it to a 

charitable institution or reissuing it to another inmate does not compel the conclusion that the confiscated property was taken for that purpose. Indeed, the record of this case demonstrates a different purpose: that TDCJ confiscated the typewriter and fan from Jackson’s possession because a question had arisen about Jackson’s ownership of the items. Jackson disputes that stated purpose and claims it was a subterfuge for TDCJ’s retaliatory tactics. But Jackson’s allegation of subterfuge does not convert TDCJ’s confiscating the items to determine ownership into an allegation that TDCJ took them for public use, as contemplated by Article I, section 19. 

Accordingly, Jackson’s reliance on Steele is misplaced. Jackson’s pleadings cannot be construed as alleging an analogous taking for public use under Article I, section 17 claims. We hold that the trial court abused its discretion denying TDCJ’s claim of sovereign immunity to Jackson’s Article I, section 17 claims.[7] 



Due Process Claim—Article I, Section 19 

In denying TDCJ’s plea to the jurisdiction, the trial court also construed Jackson’s pleadings as having alleged a “due process” violation. Article I, section 19 of the Texas Constitution bars depriving citizens of property except by “due course” of law. TEX. CONST. art. I, § 19. The Fourteenth Amendment of the federal 

Having decided that there is no taking, we do not reach the question of whether the taking constituted a public use. 

Constitution bars the same conduct when performed without “due process.” U.S. 

CONST. amend. XIV; Brewer v. Collins, 857 S.W.2d 819, 822–23 (Tex. App.—Houston [1st Dist.] 1993, no writ). Sovereign immunity does not preclude a claim alleging that the State deprived the plaintiff of property without due process of law. Bohannan v. Tex. Bd. of Criminal Justice, 942 S.W.2d 113, 118 (Tex. App.—Austin 1997, writ denied) (citing six supreme court precedents from Stone v. Tex. Liquor Control Bd., 417 S.W.2d 385, 385–86 (Tex. 1967) through City of Amarillo v. Hancock, 239 S.W.2d 788, 791–92 (Tex. 1951)). 

An individual who claims he was deprived of property interests without due process is entitled to notice and an opportunity to be heard. In re Rose, 144 S.W.3d 661, 717 (Tex. Rev. Trib. 2004) (quoting Dusenbery v. United States, 534 U.S. 161, 167, 122 S. Ct. 694, 699 (2002) (quoting United States v. James Daniel Good Real Prop., 510 U.S. 43, 48, 114 S. Ct. 492, 498 (1993)). These rights must be afforded “‘at a meaningful time and in a meaningful manner’” through “appropriate procedures.” See Brewer, 857 S.W.2d at 822–23.[8] 

Acts by officials of a state prison that result in loss of property, as Jackson 

Plaintiffs claiming due process violations are limited to equitable relief, however, and cannot recover damages. Bohannan v. Tex. Bd. of Criminal Justice, 942 S.W.2d 113, 118 (Tex. App.—Austin 1997, writ denied) (citing City of Beaumont v. Bouillion, 896 S.W.2d 143, 150 (Tex. 1995)); Alcorn v. Vaksman, 877 S.W.2d 390, 404 (Tex. App.—Houston [1st Dist.] 1994, writ denied), among other cases). Because Jackson’s claims for damages are thus precluded, we address the due process claim only within his equitable claim for injunctive relief. 

claims occurred here, do not present constitutional violations as long as the prisoner has an adequate postdeprivation remedy. See Hudson v. Palmer, 468 U.S. 517, 533–35, 104 S. Ct. 3194, 3204–05 (1984); Aguilar v. Chastain, 923 S.W.2d 740, 74344 (Tex. App.—Tyler 1996, writ denied) (holding no due process violation alleged, in accord with Hudson); see also Simmons v. Poppell, 837 F.2d 1243, 1244 (5th Cir. 1988) (stating same in context of inmate claim premised on failure to investigate lost radio); Spicer v. Collins, 9 F. Supp. 2d 673, 684 (E.D. Tex. 1998) (stating same in context of confiscation of tobacco by TDCJ officials). It is immaterial whether the official’s acts are negligent or intentional. Hudson, 468 U.S. at 533, 104 S.Ct. at 3204-05; Aguilar, 923 S.W.2d at 743-44.[9] 

After prison officials damaged and then confiscated the typewriter and box fan in this case, Jackson sought review of that confiscation after it occurred, as authorized by sections 501.007 and 501.008 of the Government Code. See TEX. GOVT. CODE ANN. §§ 501.007–.008 (Vernon 2004) (authorizing maximum payment of $500 as remedy for inmate’s lost or damaged property and outlining specific “inmate grievance” procedures to be completed to exhaust administrative remedies). The 

Postdeprivation remedies do not satisfy due process when the State acts pursuant to established, authorized policy. See Spicer v. Collins, 9 F. Supp. 2d 673, 684 (E.D. Tex. 1998) (citing Logan v. Zimmerman Brush Co., 455 U.S. 422, 435–36, 102 S. Ct. 1148, 1158 (1982)). But, Jackson does not allege that TDCJ officials acted in reliance on established prison authority in confiscating the typewriter and fan. To the contrary, he claims that the acts were unauthorized departures from that policy. 

maximum $500 remedy afforded by section 501.007 is “the exclusive administrative remedy available to an inmate for a claim for relief” against TDCJ “that arises while the inmate is housed” by TDCJ or under contract with TDCJ “other than a remedy provided by writ of habeas corpus.” TEX. GOVT. CODE ANN. §§ 501.007–.008. 

Though the grievance procedures conducted here pursuant to section 501.008 resulted in no recovery for Jackson, he does not claim that the grievance-system procedures of section 501.008 or the $500 are not “appropriate procedures” or that the maximum $500 remedy authorized by section 501.007 is not an “appropriate procedure” to remedy his perceived wrongs. See Brewer, 857 S.W.2d at 822–23. Likewise, Jackson does not allege that these procedures do not provide notice or an opportunity to be heard “at a meaningful time and in a meaningful manner.” See id. By providing an administrative remedy through the inmate-grievance procedures in sections 501.007 and 501.008 of the Government Code, the Legislature has provided adequate postdeprivation remedies to inmates like Jackson who claim that TDCJ wrongfully deprived him of property. See Aguilar, 923 S.W.2d at 744 (citing Hudson, 468 U.S. at 535, 104 S. Ct. at 3204–05). Jackson does not contend otherwise. 

Because Jackson did not allege a due process violation, we conclude that the trial court abused its discretion by construing Jackson’s pleadings as having alleged a due process violation and by denying TDCJ’s plea to the jurisdiction for that reason. 

We sustain TDCJ’s sole issue. 



Conclusion 

We reverse the interlocutory order of the trial court and render judgment dismissing Jackson’s cause. We deny Jackson’s motion to dismiss. 

Sherry Radack Chief Justice 

Panel consists of Chief Justice Radack and Justices Jennings and Bland.