Elsa GOMEZ and Jose Ramiro Gomez, Individually and on behalf of Jose Gomez and Sergio Gomez, minor children, Appellants,

v.

HOUSING AUTHORITY OF THE CITY OF EL PASO, Texas, Appellee.

No. 08–03–00224–CV.

Court of Appeals of Texas, El Paso.

Aug. 19, 2004.

Rehearing Overruled Oct. 20, 2004.

472

James F. Scherr, Scherr & Legate, P.C., El Paso, for Appellants.

Edward Dunbar, Dunbar, Armendariz, Crowley & Hegeman, L.L.P., El Paso, for Appellee.

Before Panel No. 1 LARSEN, McCLURE, and CHEW, JJ.

## OPINION

ANN CRAWFORD McCLURE, Justice.

We consider today the liability of the Housing Authority (HACEP) for federal civil rights violations arising from the sexual molestation of two children at a housing project. The trial court granted HACEP's plea to the jurisdiction. Appellants Elsa Gomez and Jose Ramiro Gomez, individually and on behalf of their children, bring forward one issue on appeal. Finding ourselves in agreement with the court below, we affirm.

## FACTUAL AND PROCEDURAL SUMMARY

The following allegations are taken from Appellants' pleadings and evidence they submitted in response to the plea to the jurisdiction. On October 29, 1999, the Gomez family was living at the Machuca Housing Project in El Paso, Texas. HACEP had a policy prohibiting criminals from residing on housing authority premises in an effort to provide security and safety for the residents. Yet HACEP permitted Enrique Martinez to occupy the premises and, tragically, he molested the Gomez children at the Project playground. Appellants sued HACEP under the Texas Tort Claims Act. By their first amended petition, they added claims under the Civil Rights Act of 1871, 42 U.S.C. & sect; 1983. Lupe Armstrong, the apartment manager at the Project, was named as a defendant in the second amended petition.

Appellants alleged that HACEP and its employees, acting under color of law and in the course and scope of their employment, deprived them of rights secured by the Constitution and laws of the United States and the State of Texas. Specifically, Appellants contended that HACEP's supervisory personnel demonstrated deliberate indifference to the children's constitutional rights to bodily integrity by permitting a convicted child molester to occupy the premises. They also pled that HACEP's screening procedures were inadequate because they failed to remove occupants with known criminal histories and failed to supervise convicted criminals.

After filing special exceptions and an answer, HACEP filed its first amended plea to the jurisdiction in which it argued that a claim under section 1983 requires proof that a policy maker implemented an official policy which resulted in a violation

of constitutional rights. It further argued that the lawsuit could not be predicated on a theory of *respondeat superior*.[1] Consequently, HACEP contended that the trial court lacked jurisdiction.

The evidence before the court included an affidavit from Enrique Martinez's wife, who was a resident at the Project. In March 1999, Mrs. Martinez asked Armstrong to add her husband to the lease. She was told that her husband could live in the unit for fifteen days pending an investigation. After the fifteen days had passed, Armstrong told Mrs. Martinez that her husband could not be added to the lease because of his criminal record, but he could visit provided he did not spend the night.

The trial court also considered Armstrong's deposition. As part of her job, Armstrong was expected to observe and enforce HACEP's rules and regulations. She would report violations to her supervisor, Sam Silvas. Armstrong was not responsible for completing a criminal background check on every resident, as it was the responsibility of the eligibility department to do so. The Project had at least fifty children as residents and a playground was provided for them. There had been no complaints of child molestation while Armstrong was manager. She explained that when residents had visitors, they were to notify the office. However, HACEP did not screen the criminal records of visitors. The lease agreement provided that visitors could stay for fifteen days. Armstrong had never seen a situation where a non-tenant spouse stayed for more than two weeks. Armstrong admitted that Mrs. Martinez had come into the

office requesting that her husband be added to the lease and that Mrs. Martinez was told her husband could visit for fifteen days until his background check was completed. She explained that if Martinez had a criminal history, he would not be able to reside at the complex. Martinez's criminal history was requested on March 23 and HACEP learned that he was ineligible on April 12. Armstrong was notified of his ineligibility, but not the reason why he was ineligible. Armstrong then notified Mrs. Martinez that her husband could not be added to the lease. Although HACEP rules permitted it, she denied saying that Martinez could visit and Mrs. Martinez never asked that he be allowed to do so. Armstrong only saw Martinez on the property one time and she told him he was prohibited from being there due to a restraining order his wife had obtained. Armstrong never saw him on the premises again. In October 1999, Martinez molested several children at the Project. Armstrong learned about it on the evening news.

## PLEA TO THE JURISDICTION

In their sole point of error, Appellants contend they properly pled a cause of action under section 1983 for which immunity was unavailable.

### Standard of Review

■ A plea to the jurisdiction is a dilatory plea by which a party contests the trial court's authority to determine the subject matter of the cause of action. *City of Saginaw v. Carter*, 996 S.W.2d 1, 2 (Tex.App.-Fort Worth 1999, pet.dism'd w.o.j.); *State v. Benavides*, 772 S.W.2d

---

1. Appellants' cause of action under the Texas Tort Claims Act is not at issue in this appeal. See *Renteria v.Housing Authority of the City of El Paso*, 96 S.W.3d 454 (Tex.App.-El Paso 2002, pet. denied)(affirming the granting of

HACEP's plea to the jurisdiction on claims presented under the Texas Tort Claims Act and state common law in another molestation case).

271, 273 (Tex.App.-Corpus Christi 1989, writ denied). The plaintiff has the burden to allege facts that affirmatively demonstrate that the trial court has subject matter jurisdiction. *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.1993); *City of Saginaw*, 996 S.W.2d at 2. Subject matter jurisdiction is a legal question which we review *de novo*. *City of Saginaw*, 996 S.W.2d at 2; *Texas Dept. of Health v. Doe*, 994 S.W.2d 890, 892 (Tex.App.-Austin 1999, pet. dism'd by agr.). We look solely to the allegations in the petition and accept them as true. *See City of Saginaw*, 996 S.W.2d at 2–3. We do not examine the merits of the case. *See City of Saginaw*, 996 S.W.2d at 3. If the petition does not allege jurisdictional facts, the plaintiff's suit is subject to dismissal only when it is impossible to amend the pleadings to confer jurisdiction. *City of Saginaw*, 996 S.W.2d at 3; *see Texas Ass'n of Bus.*, 852 S.W.2d at 446; *Liberty Mut. Ins. Co. v. Sharp*, 874 S.W.2d 736, 739 (Tex.App.-Austin 1994, writ denied).

### Sovereign Immunity

 Sovereign immunity derives from the principle that the sovereign may not be sued in its courts without its consent. *Texas Workers' Comp. Comm'n v. Garcia*, 862 S.W.2d 61, 72 (Tex.App.-San Antonio 1993), *rev'd on other grounds*, 893 S.W.2d 504 (Tex.1995). Unless waived, sovereign immunity protects the State from lawsuits for damages. *General Services Comm'n v. Little–Tex Insulation Co., Inc.*, 39 S.W.3d 591, 594 (Tex.2001). Sovereign immunity encompasses two principles: immunity from suit and immunity from liability. *Texas Natural Resource Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 853 (Tex.2002). Immunity from suit bars a suit against the State unless immunity is waived by constitutional provision or legislative enactment. *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 695 (Tex.2003). Absent consent, the State retains immunity from suit even if its liability is undisputed. *Federal Sign v. Texas Southern University*, 951 S.W.2d 401, 409 (Tex.1997). A suit against a state agency is considered to be a suit against the State. *Lowe v. Texas Tech University*, 540 S.W.2d 297, 298 (Tex. 1976). Similarly, a suit against state officials in their official capacities is equivalent to a suit against the State. *Pickell v. Brooks*, 846 S.W.2d 421, 425 (Tex.App.-Austin 1992, writ denied). Consequently, sovereign immunity protects agencies that are derived from the state constitution and laws as well as state officials sued in their official capacities. *Lowe*, 540 S.W.2d at 298; *see Pickell*, 846 S.W.2d at 425.

### Cause of Action Under Section 1983

#### Statutory Language

 Title 42 U.S.C.A. section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

42 U.S.C.A. § 1983. A cause of action under this section involves two essential elements: (1) the conduct complained of was committed by a person acting under color of state law, and (2) the conduct deprived a person of rights, privileges, or immunities secured by the Constitution or the laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981), *overruled in part on other grounds, Daniels v. Williams*, 474 U.S. 327, 331–32, 106 S.Ct.

662, 88 L.Ed.2d 662 (1986). Unlike a claim asserted pursuant to state law, consent to suit is not required. *See Nueces County v. Hoff,* 105 S.W.3d 208, 210 (Tex.App.-Corpus Christi 2003, pet. filed).

### *"Persons"*

 Municipalities and other local government units are "persons" within the meaning of section 1983 and may be liable for a constitutional tort suffered as the result of an official policy, custom or pattern. *See Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). A municipality may be held liable for a single act or decision of a municipal official with final policy making authority. *Jett v. Dallas Independent School Dist.,* 491 U.S. 701, 737, 109 S.Ct. 2702, 2724, 105 L.Ed.2d 598 (1989); *City of St. Louis v. Praprotnik,* 485 U.S. 112, 123, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988)(plurality opinion); *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986). But it cannot be held liable solely because it employs a tortfeasor-or, in other words, a municipality cannot be held liable under section 1983 on a *respondeat superior* theory. *Monell,* at 691–92, 98 S.Ct. at 2036.

### *"Acting Under Color of State Law"*

 We must first determine whether the alleged unconstitutional conduct is directly attributable to HACEP through official action or imprimatur. In other words, liability arises if a deprivation of constitutional rights was inflicted pursuant to acts which the municipality has officially sanctioned or ordered. *Pembaur,* 475 U.S. at 480, 106 S.Ct. at 1298. This analysis requires a determination of (1) a policy maker; (2) an official policy; and (3) a violation of constitutional rights whose moving force was the policy or custom. These elements distinguish individual vio-

lations by employees from those of the governmental entity. *Piotrowski v. City of Houston,* 237 F.3d 567, 578 (5th Cir. 2001). The line between official policy and independent action of employees is often elusive. *McMillian v. Johnson,* 88 F.3d 1573, 1577 (11th Cir.1996).

### A POLICY MAKER

 State law determines whether a particular official has final policy making authority. *Praprotnik,* 485 U.S. at 123, 108 S.Ct. at 924. We must look to state and local law, as well as custom and usage having the force of law. *Id.* at 124 n. 1, 108 S.Ct. at 924 n. 1. Identifying final policy makers may be a difficult task, but state law always should direct us "to some official or body that has the responsibility for making law or setting policy in any given area of a local government's business." *Id.* at 125, 108 S.Ct. at 925. We may not assume that final policy making authority lies in some entity other than that in which state law places it. *Id.* at 126, 108 S.Ct. at 925. To the contrary, we must respect state and local allocation of policy making authority. *Id.* at 131, 108 S.Ct. at 928.

 Two more principles guide our inquiry. First, "the authority to make municipal policy is necessarily the authority to make final policy." *Id.* at 127, 108 S.Ct. at 926. Second, the alleged policy maker must have final policy making authority with respect to the action alleged to have caused the particular constitutional or statutory violation. *Id.* at 123, 108 S.Ct. at 924; *Jett,* 491 U.S. at 737, 109 S.Ct. at 2724. An official or entity may be a final policy maker with respect to some actions but not others. *See Pembaur,* 475 U.S. at 483 n. 12, 106 S.Ct. at 1300 n. 12. With respect to a particular action, more than one official or body may be a final policy

maker. In other words, final policy making authority may be shared. *Praprotnik*, 485 U.S. at 126, 108 S.Ct. at 925.

Our search for those responsible for setting HACEP policy leads us the Local Government Code. Section 392. 051 provides that "[t]he powers of an authority are vested in the commissioners of the authority." Tex.Loc.Gov't Code Ann. § 392.051(b)(Vernon 1999). The authority may delegate a power or duty to an agent or employee as it considers proper. *Id.* at § 392.051(c). Therefore, the policy making authority of HACEP rests with its board of commissioners unless otherwise delegated.

Appellants' complaints of HACEP's actions can be traced to Lupe Armstrong, the Project manager. The petition alleged deliberate indifference by HACEP through its supervising personnel and Armstrong by allowing a convicted child molester on the premises. The evidence reveals that Armstrong had no authority as to whether potential tenants passed HACEP's screening process. The eligibility department determines whether a potential tenant is eligible for residency after conducting a full background check, including an inquiry into criminal history. While Armstrong was responsible for enforcing regulations, HACEP did not delegate policy making authority to apartment managers to determine screening policy or applicant eligibility. The evidence was undisputed that Martinez was denied residency in the project. Because Appellants failed to show that Armstrong, her supervisors, or members of the eligibility department had final policy making authority, they have failed to plead a jurisdictional requisite.

### Designation Of Official Policy

Appellants must also identify an official policy. HACEP's Admissions and Occupancy Policy is entitled "Resident Screening and Verification." It requires applicant screening, including an investigation concerning "a history of criminal activity involving drug-related activity, a pattern of alcohol abuse, crimes of physical violence to persons or property, or other criminal acts which would adversely affect the health, safety or welfare of other residents." Screening is required for applicants and appropriate members of their household. HACEP may deny an application for housing due to drug-related crimes or crimes against persons. Applicants are entitled to written notice of their eligibility determination and staff members in housing management are primarily responsible for implementing the policy.

A plaintiff may establish municipal liability under section 1983 by proving a violation of constitutional rights by an action pursuant to official municipal policy or pursuant to misconduct so pervasive among non-policy making employees of the municipality as to constitute a custom or usage with the force of law. *Monell*, 436 U.S. at 691, 98 S.Ct. 2018. Official policy is (1) a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the law-making officers or by an official to whom the lawmakers have delegated policy-making authority; or (2) a persistent, widespread practice of officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir.1984). Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy making authority, and actions of officers or employees do not create liabili-

ty unless they execute official policy. *Id.* Official policy involves a deliberate choice to follow a course of action made from among various alternatives by an official who is determined by state law to have the final authority to establish governmental policy. *Jane Doe A v. Special Sch. Dist. of St. Louis County,* 901 F.2d 642, 645 (8th Cir.1990). Alternatively, "custom or usage" is demonstrated by (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) the plaintiff's injury by acts pursuant to the governmental entity's custom. *Id.* at 646.

 The standard of deliberate indifference is high. *Alton v. Texas A & M University,* 168 F.3d 196, 201 (5th Cir. 1999), *citing Doe v. Dallas Indep. Sch. Dist.,* 153 F.3d 211, 218 (5th Cir.1998). Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity. *Id.* To demonstrate deliberate indifference a plaintiff must show (1) a grave risk of harm, (2) the defendant's actual or constructive knowledge of that risk, and (3) his or her failure to take easily available measures to address the risk. *Camilo–Robles v. Hoyos,* 151 F.3d 1, 7 (1st Cir.1998), *cert. denied, Hoyos v. Camilo–Robles,* 525 U.S. 1105, 119 S.Ct. 872, 142 L.Ed.2d 773 (1999), *citing Manarite v. City of Springfield,* 957 F.2d 953, 956 (1st Cir.), *cert. denied,* 506 U.S. 837, 113 S.Ct. 113, 121 L.Ed.2d 70 (1992).

HACEP's official applicant screening policy was effective—Martinez was rejected as a tenant. At issue, then, is HACEP's policy of screening non-tenant occupants and visitors, or lack thereof. Appellants argue that the screening procedure was facially inadequate because it failed to remove and exclude visitors that HACEP knew had criminal histories. By failing to supervise convicted criminals, and by allowing those with criminal histories access to the property, HACEP purportedly demonstrated deliberate indifference. In support of this argument, Appellants rely upon *Doe v. Hillsboro Independent School Dist.,* 81 F.3d 1395, 1403 (5th Cir.1996), *overruled by,* 113 F.3d 1412, 1415–16 (5th Cir. 1997). *Hillsboro* involved complaints that the district's inadequate hiring procedures—failing to check criminal histories of prospective employees and failing to supervise the custodial staff led them to hire criminals, one of whom raped the plaintiff. *Id.* at 1403. The court found that the allegations satisfied the inadequacy element because common sense recommends, and state law demands, that school officials investigate the criminal histories of prospective employees. The district's total abdication of this responsibility constituted a facially inadequate hiring process. *Id.* The court also decided that the hiring inadequacies revealed a deliberate indifference to the plaintiff's welfare because it constituted such recklessness or gross negligence as to amount to conscious indifference to the plaintiff's constitutional rights.

We first note that the court's opinion in *Hillsboro* was later reversed. In *Hillsboro II,* the court recognized that the plaintiff did not allege that the custodian acted under color of state law but instead argued that the school breached a constitutional duty in failing to protect the plaintiff from a sexual assault. 113 F.3d 1412, 1415–16. The court further recognized the general rule that municipalities have no

duty to protect citizens from private action. *Id.* at 1416. While acknowledging the potential for section 1983 liability based on egregious hiring decisions, the court refused to endorse the view that a school district has a duty to protect students from threats by third parties. *Id.* Here, as in *Hillsboro II,* Appellants failed to allege that Martinez acted under color of state law. Because they have not established a special relationship between HACEP and its tenants imposing a duty to protect those tenants from criminal acts of third parties, Appellants failed to plead a facially inadequate screening policy. Consequently, Appellants have failed to establish a constitutional violation by a person acting under color of state law.

VIOLATION OF A CONSTITUTIONAL RIGHT

 Even assuming that they have identified a person acting under color of state law, Appellants also had to plead that one of their federally-protected rights, privileges, or immunities was implicated. They pled that the children's right to bodily integrity was violated. In support of their argument, they direct us to three Fifth Circuit cases.

In *Shillingford v. Holmes,* 634 F.2d 263, 264 (5th Cir.1981), *overruled on other grounds, Valencia v. Wiggins,* 981 F.2d 1440 (5th Cir.1993), a tourist was struck by a police officer with a nightstick. The court found that the physical abuse was sufficiently severe and disproportionate to the need presented and so deliberate and unjustified as to transcend the bounds of ordinary tort law and constitute a deprivation of constitutional rights. *Id.* at 266. In *Jefferson v. Ysleta Independent School Dist.,* 817 F.2d 303, 305 (5th Cir.1987), a school teacher tied a second-grade student to a chair during two school days. The court determined that "[t]he right to be free of state-occasioned damage to a per-

son's bodily integrity [wa]s protected by the fourteenth amendment guarantee of due process." *Id., citing Shillingford v. Holmes,* 634 F.2d 263, 265 (5th Cir.1981). The court concluded that "[a] young student who is not being properly punished or disciplined has a constitutional right not to be lashed to a chair through the school day and denied, among other things, the basic liberty of access to the bathroom when needed." *Id.* And in *Doe v. Taylor Independent School Dist.,* 15 F.3d 443, 446–49 (5th Cir.), *cert. denied, Lankford v. Doe,* 513 U.S. 815, 115 S.Ct. 70, 130 L.Ed.2d 25 (1994), a student was molested by a teacher. The court noted that "[i]f the Constitution protects a schoolchild against being tied to a chair or against arbitrary paddlings, then surely the Constitution protect[ed] a schoolchild from physical sexual abuse—here, sexually fondling a 15–year old school girl and statutory rape—by a public schoolteacher." *Id.* at 451. The court found a clear deprivation of a liberty interest recognized under the substantive due process component of the Fourteenth Amendment and found it incontrovertible that bodily integrity was necessarily violated when a state actor sexually abused a schoolchild because such misconduct deprived the child of rights vouchsafed by the Fourteenth Amendment. *Id.* at 451–52.

Appellants have omitted any reference to *DeShaney v. Winnebago County Dept. of Soc. Servs.,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) where the Supreme Court found "that a State's failure to protect an individual against private violence simply d[id] not constitute a violation of the Due Process Clause." *Id.* at 197, 109 S.Ct. at 1004. It carved exceptions for prisoners and mental patients since the State had imposed limitations on their freedom and ability to care for themselves. *Id.* at 200–01, 109 S.Ct. at 1005–06.

This case does not involve state action akin to the officer-citizen assault in *Shillingford,* the teacher-student lashing in *Jefferson,* or the teacher-student molestation in *Doe.* Appellants have shown no special relationship akin to the *DeShaney* exceptions. We are concerned with molestation by a private actor, not a state actor. Accordingly, Appellants' pleading failed to show a violation of a federally-protected right, privilege, or immunity.

### *Armstrong as a Defendant*

 Finally, Appellants complain that the trial court erred in granting Armstrong's plea to the jurisdiction because a supervisory official may be individually liable for her actions where deliberate indifference is shown. But a suit against a public official in her "official capacity" is, in effect, a suit against the municipality the official represents. *Hallmark v. City of Fredericksburg,* 94 S.W.3d 703, 708 (Tex.App.-San Antonio 2002, pet. denied), *citing Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *Kentucky v. Graham,* 473 U.S. 159, 165–66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Esteves v. Brock,* 106 F.3d 674, 677 (5th Cir.1997). Appellants' claim against Armstrong in her official capacity is actually a claim against HACEP and is thus duplicative. *Kentucky,* 473 U.S. at 167 n. 14, 105 S.Ct. 3099. And while they appear to argue that Armstrong was also sued in her individual capacity, their petition does not support this contention. The actions complained of involve Armstrong's duties as Project manager for HACEP and her failure to enforce screening procedures. We perceive no individual claim against Armstrong. For all of these reasons, we overrule the sole point and affirm the judgment of the trial court below.