COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



THE COUNTY OF EL PASO,

                            Appellant,

v.

JESSIE DORADO, INDIVIDUALLY
AND AS MOTHER AND NEXT
FRIEND OF BRIANNA ALEXIS
MIRANDA, A MINOR AND ON
BEHALF OF THE ESTATE OF
EDUARDO MIRANDA A/K/A
EDUARDO MIRANDA DUARTE,
DECEASED,

                            Appellees.

§

§

§

§

§

§



No. 08-03-00421-CV

Appeal from the

120th District Court

of El Paso County, Texas

(TC# 97-2506)




O P I N I O N

           This is an appeal from a jury verdict rendering judgment against the County of El Paso
under 42 U.S.C. § 1983 arising from the death of Eduardo Miranda while he was incarcerated
in the El Paso County jail. Appellant filed a motion for new trial which was overruled by
operation of law. For the reasons stated, we reverse the judgment of the trial court and
render judgment in favor of Appellant.
 

I. FACTUAL AND PROCEDURAL BACKGROUND
           On July 25, 1997, Jessie Dorado (“Dorado”), in her individual capacity, as Mother and
Next Friend of Brianna Alexis Miranda, and on behalf of the Estate of Eduardo Miranda
a/k/a Eduardo Miranda Duarte (“Dr. Miranda”), deceased, sued the County of El Paso (“El
Paso County”). Dorado alleged that the decedent died after he was denied access to his
seizure medication following his arrest and subsequent detention in the El Paso County
Detention Facility. Appellees sued for damages pursuant to the Texas Wrongful Death Act
and the Survival Statute and for constitutional deprivations under 42 U.S.C. § 1983.
Appellant filed a Plea to the Jurisdiction based upon the lack of applicability of the Wrongful
Death Act to Counties. The trial court denied the plea and the County appealed. This Court
reversed the judgment of the trial court and rendered judgment in favor of the County
regarding the question of applicability of the wrongful death statute to counties.



           Subsequently, Appellant filed a motion for summary judgment which was granted in
part and denied in part. Appellant filed a second interlocutory appeal raising a question
regarding qualified immunity of the nurses, which was denied.


 In May of 2003, trial was
had to a jury on allegations of the violation of the constitutional rights of Eduardo Miranda
under 42 U.S.C. § 1983 and the Texas Tort Claims Act. The jury rendered a verdict against
Appellees under the Texas Tort Claims Act, but in favor of Appellees for violation of Dr.
Miranda’s constitutional rights. The trial court entered judgment on June 16, 2003 in the
amount of almost $5 million dollars in damages and attorney’s fees. Appellant filed a motion
for new trial which was overruled by operation of law. This appeal follows.
           Dr. Miranda was arrested for outstanding traffic warrants on the evening of February
27, 1997. He was booked into the El Paso County Detention Center in the early hours of
February 28, 1997. At the time of his booking, Dr. Miranda informed jail personnel he had
a history of convulsions. He did not inform them, however, that he was under medication
for the condition. In addition, Dr. Miranda made other false statements to the intake person
during the booking process. Dr. Miranda indicated that he was unemployed and provided
an incorrect address.
           On March 1, 1997, Dr. Miranda told Nurse Juan Carlos Dominguez that he was under
physician’s orders to take two milligrams of Ativan each night to control his seizures. This
information was also untruthful. Dr. Miranda was actually self prescribing a much higher
dose of the medication. Nurse Dominguez in reliance on the information provided by Dr.
Miranda, confirmed the prescription and contacted Dr. Harold Block, the jail physician, for
further instructions. Dr. Harold Block gave orders to give Dr. Miranda his prescribed
medications, which was done. The next night, March 2, 1997, Nurse Raul Tellez was
responsible for administering Dr. Miranda’s prescription. Nurse Tellez summoned Dr.
Miranda around 8 p.m., but Dr. Miranda did not respond. As a result, he did not receive his
prescribed medication. Around 11:30 p.m., Dr. Miranda suffered a seizure and Nurses
Junette Davis and Vivian Perez responded to the medical assistance call. Nurse Davis stayed
with Dr. Miranda while Nurse Perez returned to the clinic to call Dr. Block for direction. Dr.
Block instructed Nurse Perez to administer a four milligram injection of Ativan and a five
milligram injection of Haldol. Dr. Miranda was moved from his cell to the jail clinic for
treatment. At the clinic, the medical staff realized Dr. Miranda was no longer breathing. He
was transported to the hospital by EMS. He died less than an hour after his seizure.
           The record contains different accounts of what occurred during the hour prior to Dr.
Miranda’s death. The County contends Dr. Miranda suffered a seizure, but had recovered
before medical staff arrived to assist him. He then became violent and had to be restrained.
He was then carried on a stretcher to the jail clinic, handcuffed and shackled, and given an
injection of Ativan. After the injection was given, the staff noticed Dr. Miranda was no
longer breathing and had turned blue. The medical staff tried to revive him and called an
ambulance. All efforts to resuscitate him were unsuccessful.
           The Dorado family contends that Dr. Miranda was experiencing seizures before and
during the time he was restrained. Their evidence suggests that he was not violent, but rather
convulsing uncontrollably at the time he was forcibly restrained. There is also evidence
indicating that the restraints used, the position his body was placed in, and the time delays
in treatment could have caused Dr. Miranda to stop breathing.
           Dr. Miranda’s widow, Jessie Dorado, brought suit alleging wrongful death under the
Texas Tort Claims Act and asserting claims under 42 U.S.C. § 1983. This case was tried to
a jury on the 2nd of May, 2003 and a verdict was rendered in favor of the County on the
claims filed under the Texas Tort Claims Act but in favor of Dorado under 42 U.S.C. § 1983. 
The trial court entered a judgment against the County for almost $5 million in damages and
attorney’s fees.
II. ISSUES ON APPEAL
           Appellant files six issues on appeal. Issues One and Five complain of sufficiency of
the evidence regarding the jury’s verdict under 42 U.S.C § 1983 and the court’s findings of
facts and conclusions of law regarding the award of attorney’s fees. Issue Two complains
of the trial court’s ruling allowing the testimony of Dr. Glenn Johnson, a physician as an
expert witness. Issue Three complains of the jury instructions submitted by the court. Issue
Four asserts that the trial court committed error by entering a judgment against the County
under 42 U.S.C. § 1983 on the grounds that the Appellees are not entitled to recover damages
against the County and that the only proper plaintiff is the Estate of Eduardo Miranda. Issue
Six is a challenge to the interest rates assessed by the trial court.
III. STANDARD OF REVIEW
           In reviewing a “no evidence” challenge, the appellate court considers only the
evidence and reasonable inferences therefrom that tend to support the jury findings,
disregarding all contrary evidence and inferences. Redman Homes, Inc. v. Ivy, 920 S.W.2d
664, 667 (Tex. 1996). If there is any evidence of probative force to support the jury’s
findings, however, a motion for j.n.o.v. must be denied. See Navarette v. Temple Indep. Sch.
Dist., 706 S.W.2d 308, 309 (Tex. 1986).
           A “no evidence” or legal insufficiency point is a question of law which challenges the
legal sufficiency of the evidence to support a particular fact finding. There are two separate
“no evidence” claims. When the party having the burden of proof suffers an unfavorable
finding,


 the point of error challenging the legal sufficiency of the evidence should be that
the fact or issue was established as “a matter of law.” When the party without the burden of
proof suffers an unfavorable finding, the challenge on appeal is one of “no evidence to
support the finding.” In re Estate of Livingston, 999 S.W.2d 874, 879 (Tex. App.--El Paso
1999, no pet.); see Creative Manufacturing, Inc. v. Unik, Inc., 726 S.W.2d 207, 210 (Tex.
App.--Fort Worth 1987, writ ref’d n.r.e.).
           When attacking the legal sufficiency of the evidence to support an adverse finding on
an issue for which he had the burden of proof, i.e., challenging the trial court’s finding as a
matter of law, the appellant must demonstrate on appeal that the evidence conclusively
established all the vital facts in support of the issue. In re Estate of Livingston, 999 S.W.2d
at 879; Sterner v. Marathon Oil Company, 767 S.W.2d 686, 690 (Tex. 1989); Kratz v. Exxon
Corp., 890 S.W.2d 899, 902 (Tex. App.--El Paso 1994, no writ); Chandler v. Chandler, 842
S.W.2d 829, 832 (Tex. App.--El Paso 1992, writ denied). A party attempting to overcome
an adverse fact finding as a matter of law must surmount two hurdles. In re Estate of
Livingston, 999 S.W.2d at 879; Sterner, 767 S.W.2d at 690. First, the record must be
examined for evidence that supports the finding, while ignoring all evidence to the contrary.
In re Estate of Livingston, 999 S.W.2d at 879; Sterner, 767 S.W.2d at 690; Kratz, 890
S.W.2d at 902. Second, if there is no evidence to support the finding, then the entire record
must be examined to see if the contrary proposition is established as a matter of law. In re
Estate of Livingston, 999 S.W.2d at 879; Sterner, 767 S.W.2d at 690; Kratz, 890 S.W.2d at
902. Only if the contrary position is conclusively established will the point of error be
sustained. In re Estate of Livingston, 999 S.W.2d at 879-80; Kratz, 890 S.W.2d at 902; 
Chandler, 842 S.W.2d at 832. We review Appellant’s issue to resolve the question of 
liability under 42 U.S.C. § 1983 as a matter of law.
IV. 42 U.S.C § 1983
Deliberate Indifference and Custom, Policy or Practice
Title 42 U.S.C. § 1983 provides in pertinent part:
Every person who, under color of any statute, ordinance, regulation, custom,
or usage, of any State . . . subjects, or causes to be subjected, any citizen of the
United States or other person within the jurisdiction thereof to the deprivation
of any rights, privileges, or immunities secured by the Constitution and laws,
shall be liable to the party injured in an action at law.

42 U.S.C. § 1983.

           A cause of action under this section involves two essential elements: (1) the conduct
complained of was committed by a person acting under color of state law, and (2) the
conduct deprived a person of rights, privileges, or immunities secured by the Constitution or
the laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913,
68 L.Ed.2d 420 (1981), overruled in part on other grounds, Daniels v. Williams, 474 U.S.
327, 331-32, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Unlike a claim asserted pursuant to state
law, consent to suit is not required. See Gomez v. Housing Authority of the City of El Paso, 
148 S.W.3d 471, 477-78 (Tex. App.--El Paso 2004, pet. denied).
           As a pretrial detainee, Dr. Miranda’s constitutional rights flowed from the due process
guarantees of the Fourteenth Amendment rather than from the Eighth Amendment’s
prohibition against cruel and unusual punishment. See Hare v. City of Corinth, 74 F.3d 633,
639 (5th Cir. 1996) (en banc). 42 U.S.C. § 1983 authorizes suits against state and local
government officials who violate a person’s constitutional rights. In Estelle v. Gamble, the
Supreme Court held that the Eighth Amendment’s proscription of cruel and unusual
punishments forbids jail officials to be deliberately indifferent to inmates’ serious medical
needs because such indifference is itself cruel and unusual punishment. 429 U.S. 97, 104,
97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Pretrial detainees also have a right to be free from jail
officials’ deliberate indifference to their serious medical needs. Hare, 74 F.3d at 643. This
right springs from both procedural and substantive due process and is at least as great as that
mandated by the Eighth Amendment. Id.; see also Bell v. Wolfish, 441 U.S. 520, 535, 99
S.Ct. 1861, 60 L.Ed.2d 447 (1979). To establish a violation of this right, an inmate must
show that he or she was subjected to a substantial risk of serious harm. The inmate must also
prove that the jail official was subjectively aware of facts from which an inference could be
drawn that a substantial risk of serious harm existed and then actually drew such an
inference. Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994);
Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999). Finally, the inmate must establish
that the jail official’s response to the perceived risk of harm shows that official’s deliberate
indifference. Farmer, 511 U.S. at 844-45. Alejo v. Dallas County, No. Civ.A.
303CV1612N, 2005 WL 701041, at *1 (N.D.Tex. March 24, 2005).
           When such a detainee complains of unconstitutional medical treatment, there is no
significant legal distinction between pretrial detainees and convicted prisoners. Gibbs v.
Grimmette, 254 F.3d 545, 548 (5th Cir. 2001). When a pretrial detainee’s claim is based on
a jail official’s episodic act or omission, “the proper inquiry is whether the official had a
culpable state of mind in acting or failing to act.” Hare, 74 F.3d at 643. To establish
liability, a pretrial detainee must “show that a state official acted with deliberate indifference
to a substantial risk of serious medical harm and that injuries resulted.” Wagner v. Bay City,
Tex., 227 F.3d 316, 324 (5th Cir. 2000).
           In an episodic-act-or-omission case against a municipality, “an actor is usually
interposed between the detainee and the municipality, such that the detainee complains first
of a particular act of, or omission by, the actor and then points derivatively to a policy,
custom or rule (or lack thereof) of the municipality that permitted or caused the act or
omission.” Flores v. County of Hardeman, Texas, 124 F.3d 736, 738 (5th Cir. 1997). To
succeed in holding a municipality liable under these standards, the plaintiff must establish
not only that a municipal employee acted with subjective deliberate indifference but also that
the employee’s act resulted from a policy or custom adopted or maintained by the
municipality with objective deliberate indifference to the plaintiff’s constitutional rights. See
Olabisiomotosho v. City of Houston, 185 F.3d 521, 526 (5th Cir. 1999).
           Municipalities and other local government units are “persons” within the meaning of
section 1983 and may be liable for a constitutional tort suffered as the result of an official
policy, custom or pattern. See Monell, 436 U.S. at 690-91, 98 S.Ct. at 2035-36. A
municipality may be held liable for a single act or decision of a municipal official with final
policy-making authority. Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737, 109 S.Ct. 2702,
2724, 105 L.Ed.2d 598 (1989); City of St. Louis v. Praprotnik, 485 U.S. 112, 123, 108 S.Ct.
915, 924, 99 L.Ed.2d 107 (1988) (plurality opinion); Pembaur v. City of Cincinnati, 475 U.S.
469, 480, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986). But it cannot be held liable solely
because it employs a tortfeasor--or, in other words, a municipality cannot be held liable under
section 1983 on a respondeat superior theory. Monell, 436 U.S. at 691-92, 98 S.Ct. at 2036;
Gomez, 148 S.W.3d at 478.
Official Custom, Policy or Practice
           When analyzing a section 1983 claim against a municipality or governmental entity,
the court must decide if the governmental entity promulgated “an official policy, practice,
or custom,” which could subject it to section 1983 liability. Monell, 436 U.S. at 690-94, 98
S.Ct. at 2035-37. The Fifth Circuit has defined an “official policy” for the purposes of
section 1983 liability to be either: (1) a policy statement, ordinance, regulation, or decision
that is officially adopted and promulgated by the municipality’s law-making officers or by
an official to whom the lawmakers have delegated policy-making authority; or (2) a
persistent widespread practice of city officials or employees, which, although not authorized
by officially adopted and promulgated policy, is so common and well settled as to constitute
a custom that fairly represents municipal policy. Webster v. City of Houston, 735 F.2d 838,
841 (5th Cir. 1984).
           The facts of this case do not present an “official policy” under these definitions. 
There is no constitutional requirement that municipalities provide jailers and law
enforcement personnel with sophisticated medical training so that they will detect hidden
medical problems. The Fifth Circuit has applied this principle to the detection of suicidal
tendencies in pretrial detainees:
It is one thing to require a municipality to train its police officers to recognize
and not ignore obvious medical needs of detainees with known, demonstrable
and serious mental disorders. It is quite another to require as a constitutional
minimum that a municipality train its officers to medically screen each pretrial
detainee so that officers will unerringly detect suicidal tendencies. The latter
requires the skills of an experienced medical professional with psychiatric
training, an ability beyond that required of the average police officer by the
due process clause. Burns v. City of Galveston, Texas, 905 F.2d 100, 104 (5th
Cir. 1990), disagreed with on other grounds, Hare, 74 F.3d at 633.

           We believe that the same rational applies to the pretrial detainee who is not
forthcoming about his or her need for, or dependance upon, medication. The individual bears
the responsibility for informing the jail personnel about his or her medical condition in a
truthful manner. The County of El Paso, therefore, was not required to train its jailers how
to recognize the ambiguous signs of drug dependency or drug overdose. While a more
extensive medical examination might have revealed Dr. Miranda’s drug dependency, the
County and its jailers were not constitutionally required to provide such a high standard of
care. Moreover, it cannot be inferred that any additional training of or screening by the jail
staff would have prevented Dr. Miranda’s seizure from his self-induced abuse of medication. 
At the time of his arrest, Dr. Miranda failed to identify the nature of his medical condition
in a truthful manner. The jail personnel responded to the information provided to them by
Dr. Miranda. It is unreasonable to require that the jail personnel ascertain when an individual
does not disclose the extent of his or her drug dependency. The fact that the effects of his
dependency did not manifest themselves until several hours after he had been taken into
custody does not give rise to an action against the County.
           Addressing Appellees’ claims that the EPCDF failed to provide Dr. Miranda proper
medical care, the Court finds that as a matter of law the Defendant’s policies neither deprived
Dr. Miranda of adequate medical assistance, nor violated the Fourteenth Amendment’s
required level of care. Taken in its most favorable light, if all of the facts in Dr. Miranda’s
Sixth Amended Original Petition are true, the Appellant did in fact provide Dr. Miranda with
prompt medical care when jail personnel were informed of Dr. Miranda’s need for
medication. The EPCDF provided Dr. Miranda with the opportunity to receive medical care
as needed. When Dr. Miranda suffered his seizure during the late evening of March 2, 1997,
the jail nurses responded to the medical emergency and immediately took action by
contacting Dr. Block, moving Dr. Miranda to the jail clinic, administering medication as
instructed by Dr. Block, and contacting EMS to transport Dr. Miranda to the hospital when
the jail personnel determined he was not breathing. Based upon these facts, the Court finds
as a matter of law that the Defendant’s policies neither deprived Dr. Miranda of adequate
medical assistance, nor violated the Fourteenth Amendment’s required level of care. Any
claims pertaining to insufficiency of the medical care provided may only be considered as
a potential violation of state tort law or at most, ordinary negligence or medical malpractice. 
See Morris v. City of Alvin, Tex., 950 F.Supp. 804, 806-07 (S.D.Tex. 1997).
           We note that courts which have reviewed medical malpractice claims under the Eighth
Amendment have recognized that the mere inadvertent failure to provide adequate medical
care cannot be said to constitute “an unnecessary and wanton infliction of pain” or to be
“repugnant to the conscience of mankind.” Thus, a complaint that a physician has been
negligent in diagnosing or treating a medical condition does not state a valid claim of medical
mistreatment under the Eighth Amendment. Medical malpractice does not become a
constitutional violation merely because the victim is a prisoner. In order to state a cognizable
claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate
indifference to serious medical needs. It is only such indifference that can offend “evolving
standards of decency” in violation of the Eighth Amendment. The United States Supreme
Court and many of the federal courts of appeals are in agreement with this determination. 
All agree that mere allegations of malpractice do not state a claim, and while their
terminology regarding what is sufficient varies, their results are not inconsistent with the
standard of deliberate indifference. Estelle, 429 U.S. at 105-06, 97 S.Ct. at 292. See Page
v. Sharpe, 487 F.2d 567, 569 (1st Cir. 1973); Williams v. Vincent, 508 F.2d 541, 544 (2d
Cir.1974) (uses the phrase “deliberate indifference”); Gittlemacker v. Prasse, 428 F.2d 1, 6
(3rd Cir. 1970); Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975); Newman v. Alabama, 503
F.2d 1320, 1330 n.14 (5th Cir. 1974), cert. denied, 421 U.S. 948, 95 S.Ct. 1680, 44 L.Ed.2d
102 (1975) (“callous indifference”); Westlake v. Lucas, 537 F.2d 857, 860 (6th Cir. 1976)
(“deliberate indifference”); Thomas v. Pate, 493 F.2d 151, 158 (7th Cir. 1974); Wilbron v.
Hutto, 509 F.2d 621, 622 (8th Cir. 1975) (“deliberate indifference”); Tolbert v. Eyman, 434
F.2d 625, 626 (9th Cir. 1970); Dewell v. Lawson, 489 F.2d 877, 881-82 (10th Cir. 1974).
           Appellees argued that the conduct or lack of action of several jail personnel
establishes a showing of deliberate indifference to the needs of Dr. Miranda such as to create
liability under the Texas Tort Claims Act. Appellees also included a long list of alleged
unconstitutional acts ostensibly establishing the unconstitutional “custom, policy and usage”
on the part of the County but which are, in substance, related to the medical treatment
provided to Dr. Miranda while in the jail.
           A plaintiff may establish municipal liability under section 1983 by proving a violation
of constitutional rights by an action pursuant to official municipal policy or pursuant to
misconduct so pervasive among non-policy-making employees of the municipality as to
constitute a custom or usage with the force of law. Monell, 436 U.S. at 691, 98 S.Ct. at 2036.
Official policy is (1) a policy statement, ordinance, regulation, or decision that is officially
adopted and promulgated by the law-making officers or by an official to whom the
lawmakers have delegated policy-making authority; or (2) a persistent, widespread practice
of officials or employees, which, although not authorized by officially adopted and
promulgated policy, is so common and well settled as to constitute a custom that fairly
represents municipal policy. Webster, 735 F.2d at 841. Actual or constructive knowledge
of such custom must be attributable to the governing body of the municipality or to an
official to whom that body had delegated policy-making authority, and actions of officers or
employees do not create liability unless they execute official policy. Id. Official policy
involves a deliberate choice to follow a course of action made from among various
alternatives by an official who is determined by state law to have the final authority to
establish governmental policy. Jane Doe A v. Special Sch. Dist. of St. Louis County, 901
F.2d 642, 645 (8th Cir. 1990). Alternatively, “custom or usage” is demonstrated by (1) the
existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by
the governmental entity’s employees; (2) deliberate indifference to or tacit authorization of
such conduct by the governmental entity’s policymaking officials after notice to the officials
of that misconduct; and (3) the plaintiff’s injury by acts pursuant to the governmental entity’s
custom. Id. at 646.
 

Deliberate Indifference
           The standard of deliberate indifference is high. Alton v. Texas A & M University, 168
F.3d 196, 201 (5th Cir. 1999) (citing Doe v. Dallas Indep. Sch. Dist., 153 F.3d 211, 218 (5th
Cir.1998)). Actions and decisions by officials that are merely inept, erroneous, ineffective,
or negligent do not amount to deliberate indifference and do not divest officials of qualified
immunity. Id. To demonstrate deliberate indifference a plaintiff must show (1) a grave risk
of harm, (2) the defendant’s actual or constructive knowledge of that risk, and (3) his or her
failure to take easily available measures to address the risk. Camilo-Robles v. Hoyos, 151
F.3d 1, 7 (1st Cir. 1998), cert. denied, Hoyos v. Camilo-Robles, 525 U.S. 1105, 119 S.Ct.
872, 142 L.Ed.2d 773 (1999) (citing Manarite v. City of Springfield, 957 F.2d 953, 956 (1st
Cir.), cert. denied, 506 U.S. 837, 113 S.Ct. 113, 121 L.Ed.2d 70 (1992)).
           EPCDF’s policies provided for numerous opportunities for Dr. Miranda to receive
medical care or treatment while an inmate in its facility. During the booking procedure, any
inmate that revealed a serious medical condition was to be interviewed by a member of the
medical staff. Dr. Miranda, however, did not accurately describe his medical condition nor
his need for or dependance upon medication. When a need for medication was brought to
the attention of jail personnel, Dr. Miranda was taken to the jail clinic and interviewed. Dr.
Miranda, however, presented an inaccurate description of his medical history and previous
use of the medication Ativan. Based upon Dr. Miranda’s representations, the nurse on duty
contacted Dr. Block who prescribed two milligrams of Ativan. Dr. Miranda received the
Ativan on that day.
           For some reason not reflected in the record, Dr. Miranda did not respond to the
medication call out on Sunday night and did not receive his Ativan. We agree with Appellant
that the fact that the nurse on duty called Dr. Miranda’s name twice and, when he did not
respond, did not do anything further to insure that he received his medication, does not rise
to the level of an unconstitutional custom, policy or practice. At most, the failure on the part
of the nurse on duty to be more persistent in the pursuit of an inmate to insure that the inmate
receives his or her medication is ordinary negligence.
           As stated previously, to obtain relief pursuant to 42 U.S.C. § 1983, a plaintiff must
prove two elements: (1) a deprivation of a right secured by the Constitution and laws of the
United States, and (2) a deprivation of that right by the defendant acting under color of state
law. West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); Flagg Bros.,
Inc. v. Brooks, 436 U.S. 149, 155, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978). A prison official’s
deliberate indifference to a prisoner’s serious medical needs violates the Eighth Amendment.


 
Estelle, 429 U.S. at 104, 97 S.Ct. at 291.


 The appropriate test for deliberate indifference is
subjective recklessness, as used in the criminal-law sense. Farmer, 511 U.S. at 838-40. The
legal conclusion of deliberate indifference must rest on facts clearly evincing wanton


 actions
on the part of defendants. Johnson v. Treen, 759 F.2d 1236, 1237 (5th Cir. 1985). Evidence
of sick call requests, examinations, diagnoses and medications may rebut an inmate’s claim
of deliberate indifference. Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995). See
Varnado v. Lynaugh, 920 F.3d 320, 321 (5th Cir. 1991); Mendoza v. Lynaugh, 989 F.2d 191,
195 (5th Cir. 1993). An inmate’s disagreement with the kind of medical treatment that he
has received is insufficient as a matter of law to state an Eighth Amendment violation. 
Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir. 1997); Young v. Gray, 560 F.2d 201, 201
(5th Cir. 1977). Federal courts will not inquire into the adequacy or sufficiency of medical
care of state inmates unless prison officials appear to have abused the broad discretion which
they possess in this area. Haskew v. Wainwright, 429 F.2d 525, 526 (5th Cir. 1970); Parks
v. Johnson County, No. 3:01-CV-1120-P, 2001 WL 1143275, at *1 (N.D.Tex. Sept. 18,
2001).
           Although Appellees claim that Dr. Miranda needed additional or different treatment,
such claims do not give rise to a cause of action under 42 U.S.C. § 1983. See, e.g., Walker
v. Butler, 967 F.2d 176, 178 (5th Cir. 1992) (holding that a medic’s decision to make an
inmate walk to the hospital was not deliberately indifferent even though a later diagnosis
revealed a broken ankle). Appellees’ allegations address the nature and timing of the
treatment Dr. Miranda received, rather than any failure on the part of the County to provide
medical care. According to Appellees’ allegations, the medical staff of the EPCDF may have
been negligent in their treatment of Dr. Miranda but Appellees fail to state a claim against
any person for deliberate indifference to his serious medical needs. See Parks, 2001 WL
1143275, at * 2.
           We must also consider whether the alleged unconstitutional conduct is directly
attributable to El Paso County through official action or imprimatur. In other words, liability
arises if a deprivation of constitutional rights was inflicted pursuant to acts which the
municipality has officially sanctioned or ordered. Pembaur, 475 U.S. at 480, 106 S.Ct. at
1298. This analysis requires a determination of (1) a policymaker; (2) an official policy; and
(3) a violation of constitutional rights whose moving force was the policy or custom. These
elements distinguish individual violations by employees from those of the governmental
entity. Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001). The line between
official policy and independent action of employees is often elusive. McMillian v. Johnson,
88 F.3d 1573, 1577 (11th Cir. 1996).
           Supervisory officials and governmental entities such as cities and counties cannot be
held vicariously liable for their subordinates’ or employees’ actions under section 1983. See
Monell, 436 U.S. at 691-95, 98 S.Ct. at 2036-38; Bigford v. Taylor, 834 F.2d 1213, 1220 (5th
Cir.), cert. denied, 488 U.S. 851, 109 S.Ct. 135, 102 L.Ed.2d 108 (1988); Thibodeaux v.
Arceneaux, 768 F.2d 737, 739 (5th Cir. 1985) (per curiam). Supervisory officials may be
held liable only if they (1) affirmatively participate in acts that cause constitutional
deprivation, or (2) implement unconstitutional policies that causally result in plaintiff’s
injury. See Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987); see also Grandstaff v. City
of Borger, 767 F.2d 161, 169-70 (5th Cir. 1985), cert. denied, 480 U.S. 916, 107 S.Ct. 1369,
94 L.Ed.2d 686 (1987). See also Parks, 2001 WL 1143275, at 3.
Policymaker
           State law determines whether a particular official has final policy-making authority.
Praprotnik, 485 U.S. at 123, 108 S.Ct. at 924. We must look to state and local law, as well
as custom and usage having the force of law. Id. at 125 n.1, 108 S.Ct. at 925 n.1. Identifying
final policymakers may be a difficult task, but state law always should direct us “to some
official or body that has the responsibility for making law or setting policy in any given area
of a local government’s business.” Id. at 125, 108 S.Ct. at 925. We may not assume that
final policy-making authority lies in some entity other than that in which state law places it. 
Id. at 126, 108 S.Ct. at 925. To the contrary, we must respect state and local allocation of
policy-making authority. Id. at 131, 108 S.Ct. at 928.
           Two more principles guide our inquiry. First, “the authority to make municipal policy
is necessarily the authority to make final policy.” Id. at 127, 108 S.Ct. at 926. Second, the
alleged policymaker must have final policy-making authority with respect to the action
alleged to have caused the particular constitutional or statutory violation. Id. at 123, 108
S.Ct. at 924; Jett, 491 U.S. at 737, 109 S.Ct. at 2724. An official or entity may be a final
policymaker with respect to some actions but not others. See Pembaur, 475 U.S. at 484 n.12,
106 S.Ct. at 1300 n.12. With respect to a particular action, more than one official or body
may be a final policymaker. In other words, final policy-making authority may be shared. 
Praprotnik, 485 U.S. at 126, 108 S.Ct. at 925.
           Our search for those responsible for setting EPCDF policy leads us to a review of state
law. The Texas Local Government Code provides that “[t]he sheriff of each county is the
keeper of the county jail. The sheriff shall safely keep all prisoners committed to the jail by
a lawful authority, subject to an order of the proper court.” Tex. Loc. Gov’t Code Ann. §
351.041(a) (Vernon 1999).
           A county cannot be held liable solely because it employs a tortfeasor. See Monell, 
436 U.S. at 691, 98 S.Ct. at 2036. Rather, only when the execution of a county’s policies or
its customs deprives an individual of constitutional or federal rights, does liability under
section 1983 result. See id. at 694, 98 S.Ct. at 2037-38. The sheriff is without question the
county’s final policymaker in the area of law enforcement.


 Thus, a governmental entity like
El Paso County can be held accountable for the illegal or unconstitutional actions of the
Sheriff of El Paso County. He clearly set the goals for the County and determined how those
goals would be achieved. See Colle v. Brazos County, Tex., 981 F.2d 237, 244 (5th Cir. 
1993).
           Plaintiffs’ detailed Sixth Amended Petition identifies a long list of complaints
regarding the conduct of EPCDF employees and the medical personnel assigned to the jail. 
The allegations, taken as a whole however, do not complain of a policy that establishes
unconstitutional treatment of the decedent and, at most, amount to a series of specific
complaints of negligence. An official policy is “[a] policy statement, ordinance, regulation,
or decision that is officially adopted and promulgated by the municipality’s lawmaking
officers or by an official to whom the lawmakers have delegated policy-making authority.”
Webster, 735 F.2d at 841. A plaintiff may not infer a policy merely because harm resulted
from some interaction with a governmental entity. See City of Oklahoma City v. Tuttle, 471
U.S. 808, 820-24, 105 S.Ct. 2427, 2434-37, 85 L.Ed.2d 791 (1985) (holding as improper jury
instructions that permitted jurors to infer the existence of improper policies from a single
unconstitutional act). For example, even though an arresting police officer uses excessive
force, it does not necessarily follow that the city adopted a policy endorsing such acts. Cf. id.
Nevertheless, if a policy exists and is violated to cause a constitutional violation, a single
application of that policy can result in liability. Id. at 822, 105 S.Ct. at 2435-36.
           In this case, we need find no evidence that any of the conduct complained about
reflects the deliberately indifferent decision of a policymaker for the County of El Paso
which results in an official custom, policy or practice that violates the constitutional rights
of the pretrial detainee, like Dr. Miranda, because of that policy.
           As held in the case of Rhyne v. Henderson County:
A municipal “policy” must be a deliberate and conscious choice by a
municipality’s policy-maker. While the municipal policy-maker’s failure to
adopt a precaution can be the basis for § 1983 liability, such omission must
amount to an intentional choice, not merely an unintentionally negligent
oversight. Rhyne v. Henderson County, 973 F.2d 386, 392 (5th Cir. 1992)
(citations omitted).

           The Supreme Court has held that municipal failure to adopt a policy does not
constitute such an intentional choice unless it can be said to have been “deliberately
indifferent.” City of Canton Ohio v. Harris, 489 U.S. 378, 390, 109 S.Ct. 1197, 1205, 103
L.Ed.2d 412 (1989). A failure to adopt a policy can be deliberately indifferent when it is
obvious that the likely consequences of not adopting a policy will be deprivation of rights. 
Rhyne, 973 F.2d at 392.
           As Rhyne holds, the ultimate jury question in this case is whether El Paso County
adopted policies creating an obvious risk that pretrial detainees’ constitutional rights would
be violated. The facts pleaded by Appellees do not support an inference that unconstitutional
County policies were the “moving force” behind the situation that led to Dr. Miranda’s death,
the facts as presently pleaded and proved at trial show only that the possibility of negligence
regarding the medical care provided to Dr. Miranda exists. Monell, 436 U.S. at 691, 98 S.Ct.
at 2036; Colle v. Brazos County, Tex., 981 F.2d 237, 244-46 (5th Cir. 1993).
           Though we believe that the conduct of Dr. Harold Block arguably was negligent, it 
amounts to, at most, medical negligence with regard to his treatment of Dr. Miranda. 
Nothing in the record shows his conduct rises to the level of deliberate indifference
contemplated by the constitutional limitations under the Fourteenth Amendment. Further,
Appellees present little evidence that suggests that Dr. Harold Block was the policymaker
for the El Paso County Detention Facility. Appellees had the burden of establishing that the
policymaker was other than the Sheriff for the County of El Paso and they failed to meet that
burden. We agree that Texas state law provides that the Sheriff of each county is the keeper
of the county jail and recognize that the Sheriff is the policymaker for the jail.



           Appellees cite the contract between the County and Dr. Block as evidence that Dr.
Block was the policymaker for the jail with regard to medical treatment provided to inmates. 
When reviewing the contract, we note that the document includes several paragraphs
describing the duties of the Medical Director:
The MEDICAL DIRECTOR agrees to the following:
 
1. CONDUCT-The MEDICAL DIRECTOR agrees to be bound by the rules
applicable to the El Paso County Detention Facility as set out in the Texas
Commission on Jail Standards while performing the services for the El Paso
County Detention Facility.

. . .

           THE MEDICAL DIRECTOR AGREES TO:

           A. Report to the Sheriff or his designated representative.
 
B. Assist the FACILITY in meeting its duties to inmates as stated in the
Policies and Procedures Manual for the FACILITY. He shall also assist in
meeting such duties as may be imposed by Federal and State Laws and
Regulations.
 
C. Assist the FACILITY in developing and implementing policies that will
assure high quality medical and nursing care. He shall also provide and set
specific protocols, policies and procedures concerning the following:

                      1. Emergency treatment of inmates;

                      2. Prescription medicines;

                      3. Special diets; and

                      4. Procedure for routine care of inmates.
 
D. Approve and supervise all medical procedures conducted in the FACILITY
including the following;

. . .

                      1. Receiving screening procedures;

. . .

                      3. Referrals of seriously ill inmates;

                      4. Provision of non-emergency medical services;

                      5. Obtaining emergency medical and dental services;

. . .

                      11. Detoxification;

. . .

                      13. Policy concerning medication administration;

. . .

                      15. The work of qualified medical personnel;

                      16. Deciding the emergency nature of illness or injury;

. . .

IT IS FURTHER AGREED THAT:
 
A. No regulation of the FACILITY shall involve the MEDICAL DIRECTOR
in any aspect of the correctional or disciplinary procedures which is not related
to genuine medical concerns, or which would unduly restrict or compromise
the medical judgement of the MEDICAL DIRECTOR.
 
B. In situations requiring emergency medical care, custody procedures shall
yield to the medical needs of the inmates as determined by the MEDICAL
DIRECTOR. The process of moving inmates to a facility appropriate to his
health needs shall not be unreasonably slowed by the clearance procedures.

           We read the contract as establishing that the Medical Director is authorized to provide
medical care to the inmates housed in the EPCDF but the Medical Director must ultimately
answer to the Sheriff with regard to overall jail policies. Clearly, the Medical Director is
expected to assist the Facility in developing and implementing policies that will assure high
quality medical and nursing care. The Medical Director must, however, report directly to the
Sheriff. Most important, we recognize that under Texas law, only an individual licensed as
a physician by the state may practice medicine in the state.


 In providing for the availability
of medical care for Dr. Miranda, the Sheriff established the policy under which Dr. Block
was contracted with to practice medicine and provide medical care to the inmates, but
ultimately, the Sheriff was the policymaker for the jail. The contract reflects a need for
overall control of the jail and establishment of general policies and procedures balanced by
the need for medical care of the inmates. Nothing presented by the Appellees suggests that
a County policy to deny inmates medication or medical care exists. Further, there is no
evidence in the record that suggests that any policy of the County provides that any patient
suffering from a seizure disorder is deliberately denied medication and indifferently provided
medical care. To the contrary, the evidence submitted establishes that medical care was
provided to Dr. Miranda in a timely manner. Any of the arguments presented by Appellees
regarding any of the specific actions of negligence related to the treatment provided to Dr.
Miranda amount to no more than medical malpractice or ordinary negligence on the part of
Dr. Block. Dr. Block’s authority was limited to providing medical care to the inmates.
           We also note that the Appellees’ Sixth Amended Petition contains a lengthy list of
complaints that meld Appellees’ allegations about the treatment of Dr. Miranda into a series
of complaints based on negligence which Appellees contend establishes a custom, policy or
practice of constitutional dimension. It is tragic that Dr. Miranda lost his life while
incarcerated in the EPCDF but the evidence presented and the pleadings as filed do not
establish that the acts of Dr. Block amount to more than medical negligence. As such, they
have failed to establish a constitutional violation by an individual acting under color of state
law.
V. FAILURE TO TRAIN
           Appellees have also argued that the Defendants were liable for failing to train EPCDF
personnel by the County’s “[f]ailing to train jail personnel and medical personnel how to
identify and properly assess and treat seizure patients, especially in light of the voluminous
number of seizures in the jail.”
           To succeed on a failure-to-train claim, a plaintiff must establish (1) inadequate
training procedures, (2) that inadequate training procedures caused the injury, and (3)
deliberate indifference of municipal policymakers. Pineda v. City of Houston, 291 F.3d 325,
332 (5th Cir. 2002). The evidence submitted by Appellees with respect to EPCDF
personnel’s responses to the seizure Dr. Miranda suffered while in EPCDF custody did not
establish that a lack of training contributed to his injuries. None of the evidence presented
reflects a custom, policy or practice of exhibiting deliberate indifference with regard to the
response of jail personnel to individuals suffering from seizures. To the contrary, the
evidence reflects that Dr. Miranda was promptly attended to upon discovery of his seizure
and immediately provided with medical attention. It is a tragedy that he did not survive, but
medical treatment was not denied to him. See Garcia v. County of El Paso, No. 02-51408,
2003 WL 22477700, at *2 (5th Cir. Oct. 31, 2003).
           For that reason, we sustain Appellant’s Issue One, reverse the judgment of the trial
court, and render a take-nothing judgment in favor of Appellant. Because this issue disposes
of the case, we do not reach Appellant’s remaining Issues Two through Six.
 
                                                                  RICHARD BARAJAS, Chief Justice

September 15, 2005

Before Panel No. 2
Barajas, C.J., McClure, and Chew, JJ.